EASTERN OREGON FARMING CO.
*v.*
DEPARTMENT OF REVENUE

OREGON POTATO, INC. and
PORT OF MORROW COUNTY
*v.*
DEPARTMENT OF REVENUE

WESTERN EMPIRES CORPORATION
*v.*
DEPARTMENT OF REVENUE

FAR-WEST FARMS OREG., LTD.
*v.*
DEPARTMENT OF REVENUE

BOEING AGRI-INDUSTRIAL COMPANY,
DEPARTMENT OF VETERANS' AFFAIRS
OF THE STATE OF OREGON, and
FRONTIER MACHINERY, INC.
*v.*
DEPARTMENT OF REVENUE

SABRE FARMS, INC.
*v.*
DEPARTMENT OF REVENUE

Maurice O. Georges and G. Todd Norvell, Miller, Anderson, Nash, Yerke & Wiener, Portland, represented plaintiffs.

Ted E. Barbera, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiffs with order to remand to defendant rendered March 8, 1977.

CARLISLE B. ROBERTS, Judge.

The above-entitled suits were consolidated for purposes of trial. Each plaintiff appealed from an order of the Department of Revenue which held that certain irrigation equipment, located in Morrow County, Oregon, was not entitled to the classification of "inventory" as defined in ORS 310.608(3).[1]

The facts have been stipulated.

Each of the plaintiffs is the owner of a number of "center pivot sprinkler systems," irrigation devices which sprinkle water over the farm produce growing in the plaintiffs' fields. The water is taken from the Columbia River at pumping stations. Water is moved from the pumping stations to plaintiffs' farms through mainline pipe which is of large diameter and may be several miles long. Depending on the length of the mainline pipe, one or more booster stations are utilized to maintain the flow of water. When a mainline pipe reaches a plaintiff's farm, it terminates at a distribution point from which a number of smaller pipes spread throughout the farm. The distribution pipes are further subdivided from point to point until a pipe

[1]The orders from which the several suits appeal were: for Tax Court No. 1106, Order No. VL 76-522, dated September 16, 1976; Tax Court No. 1107, Orders Nos. VL 76-566 and VL 76-568, dated October 7 and 8, 1976, respectively; Tax Court No. 1108, Order No. VL 76-557, dated September 27, 1976; Tax Court No. 1110, Order No. VL 76-557, dated September 27, 1976; Tax Court No. 1112, Order No. VL 76-567, dated October 8, 1976; Tax Court No. 1126, Order No. VL 76-765, dated December 29, 1976.

approximately six inches in diameter reaches a field which is to be irrigated. At some point or points in the field, a vertical pipe, called a "riser," is installed, its open end standing 12 feet above the surface of the ground. From the pumping station to the riser the process is considered to be the "conveyance of water." "Fieldward" of the riser, the process is designated "sprinkling."

The "center pivot" is a piece of self-propelled machinery approximately one-quarter mile long, made up of towers, pipes and motors. In operation, a center pivot rotates around the riser and sprinkles a circular tract of land encompassing from 125 to 150 acres.

The center pivot has a number of components. Beginning at the riser, the first part is the pivot base, a four-sided pyramidal steel skeleton, approximately 12 feet high and 10 feet wide along each side at the bottom. The pivot base is designed to be moved from field to field, as a part of the center pivot. It rests on a concrete pad which surrounds the riser and is held in place by chains sunk in the concrete which are usually connected to the pivot base by turnbuckles. The base serves two purposes: it centers the end of the center pivot's pipe above the riser and steadies it for connection to the riser; it serves to steady the center pivot as it rotates around the riser.

The end of a center pivot's pipe is connected to a riser by means of a dresser coupling (a waterproof coupling for unthreaded pipe consisting of a rubber gasket fitted over the ends of the two pipes, connected by a clamp which holds the rubber gasket in place). The center pivot pipe leads away from the riser, about 12 feet above and parallel with the ground. Spaced along the pipe are sprinkler heads which distribute the water. The pipe is supported and moved by 10 to 12 "towers" spaced approximately 125 feet apart. Each tower is a steel A-frame with rubber-tired wheels located at the base of each leg of the "A." Each tower is independently powered and the mechanism is so con-

trived that, upon being placed in use, the tower farthest from the pivot base moves first. As the outer tower gets out of alignment with the next tower, a control device activates the next inner tower's motor, moving it into alignment with the outer tower. Succeeding towers along the line toward the riser follow the same pattern. Each tower moves along the distance required to maintain the irrigation pipe in a straight line as it rotates around the riser.

Center pivots may be moved from field to field, depending upon the nature of the crops. The crops produced by the plaintiffs' operations, irrigated by use of center pivots, include potatoes, wheat, barley, corn, milo, cover crops, watermelons and soybeans.

The installation from the river to and including the riser is permanently affixed to or buried in the ground. The questions of classification and taxability of this part of the property are not before the court. Plaintiffs are seeking the tax advantages of ORS 310.608 on account of the center pivots for the property tax year 1975-1976 and their entitlement to the benefits of this statute constitutes the only issue before the court. The statute, in pertinent part, reads:

"(1) There shall be exempt from taxation a percentage of the true cash value of the taxpayer's inventory as indicated for each tax year beginning on July 1 of the following years: * * * 1975 . . . 50 percent * * *.

"(2) For tax years beginning on July 1, 1980, and thereafter, all inventory shall be exempt from ad valorem taxation.

"(3) As used in subsection (1) of this section, 'inventory' means [a] *farm machinery used in the planting, cultivating, or harvesting of farm crops,* [b] all livestock and [c] items of tangible personal property described as materials, supplies, containers, goods in process, finished goods and other personal property owned by or in possession of the taxpayer, that are or will become part of the stock in trade of the taxpayer held for sale in the ordinary course of his business." (Emphasis and bracketed letters supplied.)

[ 77 ]

In its opinions and orders denying plaintiffs' center pivots the status of "inventory," defendant has delved deeply into the problem of classification of the subject property as fixtures (real property) or as personalty. Defendant has deemed the answer to this question to be determinative because of its conclusion that inventory, as a matter of definition, *must* be personalty. It then found the statute to be ambiguous and, following the accepted rule of strict construction of tax exemptions, excluded center pivots from the benefits of ORS 310.608.

This court, although impressed by defendant's thoughtful research, believes that it has failed to "see the forest for the trees."[2] It has not correctly grasped the legislative intent expressed in ORS 310.608(3).

A careful examination of ORS 310.608(3) shows that the word "inventory" has not been defined by the legislature in the usual sense of that word. Three distinct categories of property are described in the subsection as includable in "inventory" as the word is "used in subsection (1) of this section." The third category, relating to "items of tangible personal property * * * held for sale in the ordinary course of his business" is a typical, accepted description of inventory, customarily followed. However, the first two categories are most significant for purposes of legislative construction, indicating as they do that the legislative tax committees, drafting the act, were wide ranging in their contemplation of the word "inventory" as used for farm purposes. Normally, farm machinery used in planting, cultivating or harvesting farm crops is a depreciable item and would never be contemplated as an inventory item in the hands of the user as would a stock of goods held for sale in the ordinary course of business. The second category includes *all* livestock. Some "livestock" are inventory within the usual meaning but ordinarily a careful distinction is made for tax purposes between a herd of

---

[2] *Musarion,* Canto II (1768), by Christoph Martin Wieland (1733-1813).

cattle, the units of which are held for sale in the ordinary course of business, and those classifications of brood stock and dairy stock which must be regarded as depreciable capital items. By legislation, these niceties have been purposefully swept aside as to farm machinery and livestock, which otherwise would not be considered to be "inventory."[3]

■■ In construing statutes, courts will attribute to words their customary or popular sense or their technical meaning if a technical word is used. But since legislative intent must be ascertained and followed, courts recognize the legislative power to specify a new definition for a particular word. For the purposes of the statutory section in which it is placed, such definition will be made effective if understandable.

■ The distinction between real and personal property is irrelevant here. Farm machinery may be real property or it may be personal,[4] but no one questions that the center pivots here considered are farm machinery used in the cultivation of farm crops. These come within the special definition of "inventory" as conceived and intended by the legislature for the purposes of ORS 310.608. The context of the statute makes it clear that the legislature sought extraordinary tax relief for farm owners and specifically broadened the word "inventory" to obtain it. The

---

[3]The farm machinery category was particularly added to the other two by an amendment found in Or Laws 1973, ch 670, § 1.

[4]"Machinery" and "machine" are almost interchangeable words but there is some authority that "machinery" is a more comprehensive word than "machine." 26 West, Words and Phrases, *Machinery* 20 (1953). The words include simple machines (the ladder, the wheel and axle, the pulley, etc.) and complex or complicated instruments, both real and personal. *See Jodoin v. Luckenbach S.S. Co., Inc.,* 125 Or 634, 642, 268 P 51 (1928), a "motor-car" (personalty); *Thompson v. Union Fishermen's Co-op. P. Co.,* 118 Or 436, 448, 235 P 694 (1926), elevator (real property fixture); *Malloy v. Marshall-Wells Hardware Co.,* 90 Or 303, 313, 173 P 267 (1918), "block and tackle" (personalty); and *Dunn v. Orchard Land Co.,* 68 Or 97, 102, 136 P 872 (1913), a "slab haul" (real property).

language is plain.[5] The legislative intent must be followed.

Defendant's several orders are set aside and held for naught. In the stipulation filed in this court on February 15, 1977, the parties, through their counsel, agreed that "if a decision is rendered in favor of plaintiffs, the cases shall be returned to the defendant for further proceedings looking to the determination of value of Center Pivots improperly included in the assessment of land farmed by plaintiffs." Accordingly, orders of remand shall be prepared by plaintiffs, following the procedure for a decree in the court's rule 27. Each party shall bear its own costs.

---

[5] *Methodist Book Concern v. St. Tax Com'n,* 186 Or 585, 592, 208 P2d 319, 322 (1949).