Argued and submitted November 2, 2009, judgment of Tax Court affirmed
January 28, 2010

# NORTHWEST NATURAL GAS COMPANY,
*Respondent,*

*v.*

# DEPARTMENT OF REVENUE,
*Appellant.*

(TC 4751; SC S056384)

226 P3d 28

Marilyn J. Harbur, Senior Assistant Attorney General, Salem, argued the cause for appellant. With her on the opening brief were Hardy Myers, Attorney General, and Melisse S. Cunningham, Assistant Attorney General. With her on the reply brief were John R. Kroger, Attorney General, and Melisse S. Cunningham, Assistant Attorney General.

Robert T. Manicke, Stoel Rives LLP, Portland, argued the cause for respondent. With him on the brief were James N. Westwood and Eric J. Kodesch.

LINDER, J.

**LINDER, J.**

The issue in this appeal from a judgment of the Oregon Tax Court is whether the business inventory of taxpayers subject to central assessment pursuant to ORS 308.505 to 308.665 is exempt from ad valorem property taxation under ORS 307.400. The Tax Court concluded that the Department of Revenue (department) had incorrectly determined that, because Northwest Natural Gas Company (taxpayer) is subject to central assessment, its inventory is not exempt under the business inventory exemption. *Northwest Natural Gas Co. v. Dept. of Rev.*, 19 OTR 367, 2007 WL 4127669 (2007) (*Northwest Natural I*). For the reasons discussed below, we hold that the business inventory exemption applies generally to exempt the "inventory" of all taxpayers—including centrally assessed companies. Accordingly, we affirm the decision of the Tax Court.

## I. RELEVANT STATUTES

An understanding of the central assessment statutes and the business inventory exemption statute will provide helpful context for our discussion of the factual and procedural background below. Accordingly, we discuss those statutes at this point.

Certain property in Oregon is centrally assessed by the department, rather than locally assessed by individual counties. The central assessment statutes, ORS 308.505 to 308.665,[1] are a subset of the chapter of the tax code pertaining to assessment of property for taxation, ORS chapter 308. Some provisions of that chapter outline the general assessment scheme. *See* ORS 308.005 - 308.343 (containing provisions relating to assessment generally). The bulk of ORS

---

[1] The tax years at issue in this case are 2002-03 to 2005-06. The applicable tax code statutes during those years did not substantively change. Thus, all references to the Oregon Revised Statutes are to the 2005 version. We also note that the parties relied on the 2005 version of the statutes in their briefs before this court.

Certain legislative amendments to the central assessment statutes went into effect January 2, 2009. Those amendments are intended to "modernize and clarify the central assessment statutory law, while continuing the central assessment system as it currently operates." Or Laws 2009, ch 128, § 1(3). The changes "do not constitute a change in the policies of the State of Oregon with respect to the central assessment system[.]" *Id.* § 1(4). Those most recent amendments, whatever their effects, do not apply to this case.

chapter 308, however, consists of sections devoted to the assessment of particular types of properties, such as, *inter alia*, homes for the elderly, industrial plants, various types of residences, and designated utilities and companies subject to central assessment. ORS 308.408 - 308.905; *see also D. R. Johnson Lumber Co. v. Dept. of Rev.*, 318 Or 330, 335-36, 866 P2d 1227 (1994) (describing the particular and general provisions of ORS chapter 308). ORS 308.515(1) designates the utilities and companies subject to central assessment:

> "The Department of Revenue shall make an annual assessment of any property that has a situs in this state and * * * is used or held for future use by any company in performing or maintaining any of the following businesses or services or in selling any of [certain] commodities * * *."

The particular commodities listed in the statute include, among others, "[r]ailroad transportation," "[a]ir transportation," "[c]ommunication," "[h]eating" and, most pertinent here, "[g]as." ORS 308.515(1)(a) - (n).

ORS 308.510(1) defines the scope of "property" subject to central assessment for companies identified in ORS 308.515(1). That statute provides, in part:

> " 'Property,' as used in ORS 308.505 to 308.665, includes all property, real and personal, tangible and intangible, used or held by a company as owner, occupant, lessee or otherwise, for or in use in the performance or maintenance of a business or service or in a sale of any commodity, as set forth in ORS 308.515, * * * and includes but is not limited to * * * appliances, * * * merchandise, inventories, * * * and all other goods or chattels."

Any property that is not "centrally assessed" is "locally assessed" by the county where the property is located. ORS 308.517(5).

Finally, we turn to the business inventory exemption statute at issue in this case, ORS 307.400. That exemption is not part of the general assessment provisions or the central assessment statutory scheme in ORS chapter 308. Rather, it is found in the statutes outlining more generally property that is subject to taxation and exemption, ORS chapter 307. ORS 307.400 provides:

"Items of tangible personal property consisting of inventory, including but not limited to materials, supplies, containers, goods in process, finished goods and other personal property owned by or in possession of the taxpayer, that are or will become part of the stock in trade of the taxpayer held for sale in the ordinary course of business, are exempt from ad valorem property taxation."

Again, the parties dispute whether taxpayer, as a centrally assessed company, is entitled to the benefit of that exemption. Cast against the backdrop of the statutory scheme, the issue, more precisely, is whether the business inventory exemption found in ORS chapter 307 applies to the centrally assessed property provisions contained in ORS chapter 308.

## II. FACTUAL AND PROCEDURAL BACKGROUND

With those statutory provisions in mind, we turn to the factual and procedural background that gave rise to this appeal. Our summary is taken from the stipulated facts submitted to the Regular Division of the Oregon Tax Court and from the record.

Taxpayer is an Oregon corporation "engaged primarily in the distribution and sale of natural gas to customers" in the Pacific Northwest. Taxpayer is centrally assessed by the department pursuant to ORS 308.515(1). The tax years subject to this appeal are 2002-03 to 2005-06. During those tax years, taxpayer stored natural gas in two liquefied natural gas storage facilities in Portland and Newport, and in four to six underground natural gas storage facilities near Mist (gas reserves).[2] Taxpayer also owned and operated a retail store in Portland.[3] The store offered an array of appliances—both gas and electric—for sale to the general public

---

[2] Two of the underground natural gas storage facilities became available during the 2005-06 tax year and are not under appeal for the remainder of the tax years at issue.

[3] In addition to the Portland store, taxpayer owned and operated stores in Salem, Albany, and Eugene. The Salem store was in operation during the 2002-03 and 2003-04 tax years, the Albany and Eugene stores were in operation during the 2002-03 to 2004-05 tax years, and the Portland store was in operation during all the subject tax years. As explained below, 347 Or at 541 n 6, only the appliances assessed during the 2005-06 tax year—those sold at the Portland retail store—are at issue on appeal.

(retail appliances). The parties have stipulated that taxpayer's gas reserves and retail appliances are "tangible personal property" and "inventory" or "inventories" within the common, ordinary meaning of those terms. The parties further agree that taxpayer's gas reserves are property subject to central assessment under ORS 308.510(1). The parties dispute, however, whether taxpayer's retail appliances are also subject to central assessment.

The department issued taxpayer notices of proposed assessment for taxpayer's centrally assessable property for the subject years. The proposed assessment included values for both taxpayer's gas reserves and retail appliances.[4]

In 2004, taxpayer petitioned the department for the 2002-03, 2003-04, and 2004-05 tax years to exercise its supervisory authority to correct the tax rolls pursuant to ORS 306.115.[5] Taxpayer sought a reduction in its assessed value, arguing that its gas reserves were exempt from ad valorem property taxation pursuant to the business inventory exemption, ORS 307.400. The petition did not include taxpayer's retail appliances. The department denied supervisory relief, reasoning that taxpayer's gas reserves were not exempt from taxation under the business inventory exemption, because taxpayer is subject to the central assessment provisions, ORS 308.505 - 308.665, which expressly include "inventories" as part of the definition of "property" that is assessable.

In 2005, taxpayer also appealed to the department for the 2005-06 tax year. Taxpayer sought a reduction in its assessed value, again arguing that its inventory was exempt from taxation. Taxpayer's appeal included both its gas reserves and retail appliances for the 2005-06 tax year.[6] The department denied the appeal on the same grounds.

---

[4] The proposed assessment values for taxpayer's gas reserves for each tax year were $38,204,470, $46,233,603, $38,883,344, and $50,190,503, respectively. The respective values of taxpayer's retail appliances were $809,018, $595,480, $604,359, and $441,066.

[5] ORS 306.115 provides, in part, that under its supervisory powers, "the department may order the correction of clerical errors, errors in valuation or the correction of any other kind of error or omission in an assessment or tax roll" as provided under the statute.

[6] Because taxpayer included its retail appliances only in its 2005-06 appeal, only the 2005-06 assessment of taxpayer's retail appliances is at issue in this appeal.

Taxpayer appealed both cases to the Magistrate Division of the Tax Court. The Magistrate Division consolidated the two cases, which were then specially designated to the Regular Division of the Tax Court on petition of both parties. Before the Regular Division of the Tax Court, the parties filed cross-motions for summary judgment on the legal issue of whether the subject properties (taxpayer's gas reserves and retail appliances) are tax exempt under the business inventory exemption, ORS 307.400. Taxpayer argued, based on the text and context of the business inventory exemption, that the legislature intended the exemption to apply to centrally assessed and locally assessed property alike. Alternatively, taxpayer contended that, if the business inventory exemption statute did not apply to centrally assessed property, taxpayer's retail appliances were not subject to central assessment and, thus, were exempt nonetheless.

The department responded that taxpayer's "inventories" were taxable, because all property subject to central assessment is taxable, except as specifically provided by the central assessment statutes. The department further asserted that taxpayer's retail appliances were subject to central assessment, and thus not exempt for the same reason.

The Tax Court granted taxpayer's motion in part and granted the department's cross-motion in part. *Northwest Natural I*, 19 OTR at 380-81. The court agreed with taxpayer that the business inventory exemption applied to centrally assessed property and, thus, to taxpayer's inventory. Accordingly, the court held that taxpayer's gas reserves were exempt from taxation. As to the retail appliances, the court held that, because taxpayer's retail appliances were not included in its petition for the 2002-03 to 2004-05 tax years, the department did not exercise discretion that could be reviewed by the Tax Court for those tax years. *Id.* at 380. The court ordered supplemental briefing as to whether the 2005-06 appeal to the department included the retail appliances. *Id.* at 381.

The department moved for reconsideration and stipulated that taxpayer's retail appliances were included in taxpayer's appeal for the 2005-06 tax year. The Tax Court

denied reconsideration and determined that, based on the department's stipulation, taxpayer's retail appliances for the 2005-06 tax year were subject to the court's original decision and, thus, exempt from taxation. *Northwest Natural Gas Co. v. Dept. of Rev.*, 19 OTR 481, 482, 487, 2008 WL 2727238 (2008) (*Northwest Natural II*). The department appealed. ORS 305.445.

## III. ANALYSIS

On appeal to this court, the department challenges the Tax Court's determination that taxpayer's gas reserves and retail appliances are exempt from ad valorem property taxation pursuant to the business inventory exemption statute, ORS 307.400. We review decisions of the Tax Court for "errors or questions of law or lack of substantial evidence in the record to support the tax court's decision or order." ORS 305.445.

As we have described, this dispute involves two types of property owned by taxpayer: gas reserves and retail appliances. The parties agree that each property is "inventory" under the plain, natural, and ordinary meaning of that term. The parties also agree that taxpayer's gas reserves are "property" subject to central assessment pursuant to ORS 308.510(1). Thus, the sole issues on appeal are whether ORS 307.400, the business inventory exemption statute, applies to the property of centrally assessed taxpayers, and if not, whether taxpayer's retail appliances are subject to local, not central assessment, and therefore exempt nonetheless.

We begin with the pivotal issue on which the Tax Court's decision turned—whether the business inventory exemption applies to the property of centrally assessed taxpayers. To analyze that issue, we must interpret the business inventory statute—a task that involves examining the text and context of the statute and any pertinent legislative history that the parties have proffered, giving that history such weight, if any, as it appears to merit. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

We turn to the text of the tax exemption statute at issue in this case—the business inventory exemption statute,

ORS 307.400. As noted, that statute provides an exemption from ad valorem property tax for

> "[i]tems of *tangible personal property consisting of inventory*, including but not limited to materials, supplies, containers, goods in process, finished goods and other personal property owned by or in possession of the taxpayer, *that are or will become part of the stock in trade of the taxpayer held for sale in the ordinary course of business * * *.*"

ORS 307.400 (emphases added).

On its face, the statute's text contains no limiting terms that operate to remove centrally assessed taxpayers or their centrally assessed property from the benefits of the exemption. Rather, the statute exempts inventory that is or will become part of the "stock in trade of *the taxpayer* held for sale in the ordinary course of business." (Emphasis added.) That generic reference to "the taxpayer" does not differentiate between taxpayers whose property is locally or centrally assessed. Thus, the plain text of the statute supports taxpayer's contention that the business inventory exemption applies equally to locally and centrally assessed taxpayers.

The department, for its part, does not contend otherwise. Rather than rely on the text of the statute, the department's arguments are twofold. First, the department asserts that, for purposes of the business inventory exemption, the definitions in ORS 307.020 control, and those definitions remove centrally assessed taxpayers from their scope. Second, the department urges, based on the taxation scheme more generally, that the legislature never intended the business inventory exemption to apply to taxpayers or property subject to central assessment.

A.  *The relationship between ORS 307.020 and ORS 307.400.*

We begin with the department's reliance on the definitions contained in ORS 307.020. The business inventory exemption statute exempts "[i]tems of *tangible personal property* consisting of inventory[.]" (Emphasis added.) The term "tangible personal property" is defined in ORS 307.020(1)(c) as follows:

"As used in the property tax laws of this state, unless otherwise specifically provided:

"* * * * *

"(c) 'Tangible personal property' includes but is not limited to all chattels and movables, such as boats and vessels, merchandise and stock in trade, furniture and personal effects, goods, livestock, vehicles, farming implements, movable machinery, movable tools and movable equipment."

As that statute provides, the definitions provided in ORS 307.020(1) apply to the entirety of the Oregon tax code, unless the legislature expressly provides otherwise. ORS 307.020(2) embodies just such an express exception, and specifically provides that the definitions contained in ORS 307.020(1), including the definition of "tangible personal property," do not apply to "any person, company, corporation or association covered by [the central assessment statutes,] ORS 308.505 to 308.665."[7]

The department essentially urges this court to conclude that, because the statutory definition of "tangible personal property" does not apply to centrally assessed taxpayers, their property is not within the scope of property subject to the business inventory exemption statute, ORS 307.400. That argument is predicated on the department's view that ORS 307.400 exempts only "tangible personal property" as it is defined in ORS 307.020.

The department's argument has two flaws in its logic. First, ORS 307.020 is a definitional provision only. It merely defines what is encompassed in various types of personal property, including "tangible personal property," for one class of taxpayer—*i.e.*, locally assessed taxpayers. The fact that the definitions in that statute do not apply to centrally assessed taxpayers does not mean that no other definition applies. Neither does it mean that centrally assessed taxpayers do not own the types of property that ORS 307.020

---

[7] ORS 307.020(1) contains definitions for "intangible personal property" and "personal property," as well as "tangible personal property." Pursuant to ORS 307.020(2), none of those definitions applies to centrally assessed companies.

defines, including tangible personal property, for tax purposes.[8] Rather, it means only that what qualifies as "tangible personal property" for centrally assessed taxpayers is determined by some other source of law. That source of law is ORS 308.510(1), which, as earlier quoted, provides that the "property" of centrally assessed taxpayers, for tax purposes, includes "all property, real and personal, tangible or intangible * * *." *See also* ORS 307.030 (intangible personal property held by centrally assessed taxpayers is subject to assessment and taxation). Although the legislature did not set forth an express definition of "tangible personal property" in ORS 308.510(1) as it applies to centrally assessed taxpayers, that fact means only that we look to the common, ordinary meaning of the term to determine what property, when held by a centrally assessed taxpayer, qualifies as "tangible personal property." *See Friends of Parrett Mountain v. Northwest Natural Gas Co.*, 336 Or 93, 114, 79 P3d 869 (2003) (we give terms that do not have special statutory definitions or any well-understood legal meaning their plain, natural, and ordinary meanings).

The second flaw in the department's argument is its assumption that the business inventory exemption, as set forth in ORS 307.400, extends only to "tangible personal property" as defined in ORS 307.020. By its terms, the business inventory exemption is not so limited. As we have described, it does not distinguish between types of taxpayers or otherwise differentiate between locally assessed and centrally assessed taxpayers. Neither does it incorporate only a single definition of "tangible personal property." Nothing precludes the legislature from defining that term differently for

---

[8] To some degree, the department's argument proves too much. That is, a literal application of the department's proposed interpretation of ORS 307.020(2) would result in removing centrally assessed taxpayers not only from the business inventory exemption statute, but also from any other statutes in the tax code that apply to "tangible personal property," "intangible personal property" and "personal property"—including the provisions that subject such taxpayer's property to assessment and taxation. *See, e.g.*, ORS 307.030(1) ("All real property within this state and all *tangible personal property* situated within this state, except as otherwise provided by law, shall be subject to assessment and taxation in equal and ratable proportion." (Emphasis added.)).

different taxpayers, while still providing those different taxpayers with a common exemption for their tangible personal property, however defined, if it otherwise qualifies as business inventory. As a matter of plain text, that is what the legislature appears to have done.

In arguing to the contrary, the department places significant reliance on this court's decision in *Saunders v. Dept. of Rev.*, 300 Or 384, 711 P2d 961 (1985). In *Saunders*, a locally assessed taxpayer sought a determination that certain farm structures qualified for the business inventory exemption under ORS 307.400. 300 Or at 386. This court explained that, to qualify for that exemption, the property must meet two requirements: (1) the "movable" requirement contained in ORS 307.020 ("tangible personal property" includes all chattels and "movables"); and (2) the "use" requirement contained in ORS 307.400 (property that is or will become part of the stock in trade of the taxpayer held for sale in the ordinary course of business). The parties in *Saunders* agreed that the subject property satisfied the "use" requirement, but disputed whether it was "movable" for purposes of ORS 307.020. 300 Or at 387.

This court held that the subject property was not "movable" as ORS 307.020 requires, because it was real property, not tangible personal property. 300 Or at 387, 391. In reaching that conclusion, this court relied on 1977 legislative amendments to the predecessor business inventory exemption statute, *former* ORS 310.608 (1975), *renumbered as* ORS 307.400 (1981). 300 Or at 388-89. Those amendments had come after the Tax Court's decision in *Eastern Ore. Farming Co. et al v. Dept. of Rev.*, 7 OTR 74, 79, 1977 WL 1599 (1977), in which the Tax Court had held that "[t]he distinction between real and personal property is irrelevant" in determining whether property is "inventory" subject to exemption under *former* ORS 310.608. Rather, the Tax Court determined, it was sufficient if the subject property came within the "special definition" of "inventory" contained in the business inventory exemption itself (*former* ORS 310.608). 7 OTR at 79-80.

Following the decision in *Eastern Ore. Farming Co.*, the legislature retroactively amended the business inventory

exemption statute to effectively overrule that case by limiting the exemption to tangible personal property. *See* Or Laws 1977, ch 819, § 1(3).[9] Based on that amendment, this court concluded:

> "It is clear from the statute and the legislative history that the legislature intended that the exemption from ad valorem taxes now codified in ORS 307.400 apply only to a category of tangible personal property defined in ORS 307.020(3). Because only tangible personal property qualifies for the exemption under ORS 307.400, we must determine if [the subject property is] real or personal property under ORS chapter 307. For purposes of taxation the definitions in ORS 307.010(1) and ORS 307.020(3) control."

*Saunders*, 300 Or at 389. The court determined that the subject property did not qualify as "tangible personal property" under ORS 307.020 and, accordingly, held that it was not subject to the business inventory exemption under ORS 307.400. 300 Or at 391.

The department asserts that taxpayer's property is not subject to the business inventory exemption because, under *Saunders*, that exemption applies only to the "tangible personal property" defined in ORS 307.020—a term that does not apply to taxpayer as a centrally assessed company. We do not read *Saunders* so broadly. Certainly, *Saunders* stands for the proposition that property must be "tangible personal property" held for sale to qualify as "inventory" under ORS 307.400. But the holding in *Saunders* has to be understood in the context of the particular issue that the case presented. Because the taxpayer in *Saunders* was a locally assessed taxpayer, this court appropriately required the subject property in that case to satisfy the definition of "tangible personal property" under ORS 307.020—the definition that applies to locally assessed taxpayers. This court was not presented with an issue entailing how the provisions of ORS 307.020, ORS 307.400, and the central assessment statutes are to be read together, and its holding properly cannot be understood to

---

[9] The legislature amended subsection (3) of the statute to read:

"As used in subsection (1) of this section, 'inventory' means the following *tangible personal property*: * * *."

Or Laws 1977, ch 819, § 1(3) (emphasis added).

resolve that question. Accordingly, *Saunders* does not affect our understanding of the plain text of ORS 307.400 and its interrelationship with ORS 307.020.

We have, however, examined the legislative history of ORS 307.020 to determine whether it reveals a contrary intent—that is, whether the legislature, in excluding centrally assessed taxpayers from the definitions in ORS 307.020(1), intended to remove centrally assessed property from the scope of property subject to the business inventory exemption statute. *See Gaines*, 346 Or at 172 (court will consult legislative history even if the court does not perceive an ambiguity in the statute's text). We find nothing in the pertinent history to support that conclusion.

What is now subsection (2) of ORS 307.020 was added to the statute in 1977 as part of Senate Bill (SB) 113. Or Laws 1977, ch 602, § 1(4). SB 113 made three distinct amendments to the tax code: (1) it expanded the definition of "intangible personal property" in ORS 307.020(1) to include information-storage media; (2) it excluded certain "intangible property" from the definition of "property" subject to central assessment under ORS 308.510(1); and (3) it clarified that the property of centrally assessed companies was not subject to the definitions contained in ORS 307.020—at that time, "intangible personal property," and "tangible personal property." Or Laws 1977, ch 602, §§ 1, 2.

The main purpose of SB 113 was the first that we identified, to expand the definition of "intangible personal property" to include certain information-storage media. Tape Recording, Senate Revenue and School Finance Committee, SB 113, Jan 24, 1977, Tape 3, Side 1 (statement of Richard A. Munn, Legislative Revenue Officer). The primary concern behind the bill was that counties were treating the property of title companies inconsistently—some counties were assessing and taxing information-storage media; others were not. *Id.* (statement of Don Fisher, Department of Revenue).

In hearings on the bill, the department clarified that the bill amended only the definition of "intangible personal property" and did not alter what property was taxable or exempt. *See* Tape Recording, Senate Revenue and School Finance Committee, SB 113, Mar 21, 1977, Tape 17, Side 1

(statement of Ted De Looze, Department of Revenue) ("This only defines this type of property. It does not say what is taxable or what is not taxable. You have to go to the other provisions of the law. * * * [W]e did not intend this as the rule as to whether it is taxable or not."). However, the 1977 amendments indirectly exempted more personal property for locally assessed taxpayers, because those amendments broadened the definition of "intangible personal property"; locally assessed taxpayers are exempt from being taxed on such property. *See* ORS 307.030(2) ("Except as provided in [the central assessment statutes,] ORS 308.505 to 308.665, intangible personal property is not subject to assessment and taxation."); Tape Recording, Senate Revenue and School Finance Committee, SB 113, Mar 21, 1977, Tape 17, Side 1 (statement of Ted De Looze) (admitting that SB 113 "maybe indirectly" affects the personal property subject to exemption). Consequently, the department recommended expanding the definition of "intangible personal property" to include information-storage media, because that property was difficult for assessors to value and, thus, should come within the exemption for intangible personal property for locally assessed taxpayers. Tape Recording, Senate Revenue and School Finance Committee, SB 113, Jan 24, 1977, Tape 3, Side 1 (statement of Don Fisher).

Unlike that of locally assessed taxpayers, the "intangible property" of centrally assessed taxpayers *is* taxed. ORS 307.030(2); ORS 308.510(1). Utilities requested that the amended definition of "intangible personal property" not apply to them, because they did not want to be burdened with the difficulty of identifying the values of information-storage media on their annual statements to the department. *See* Tape Recording, Senate Revenue and School Finance Committee, SB 113, May 6, 1977, Tape 24, Side 1 (statement of Sen Victor Atiyeh) (opining that separating intangible property in central assessment appraisal process would create more problems for centrally assessed companies in recordkeeping than it would change in value for the utility). The utilities also did not want to disturb prior court cases classifying their property as either tangible or intangible property. *See* Tape Recording, House Revenue and School Finance Committee, SB 113, June 28, 1977, Tape 37, Side 1

(statement of Assistant Attorney General Ira Jones). The legislature responded to the requests of the utilities and added what is now subsection (2) of ORS 307.020 to exclude centrally assessed taxpayers from the amended and expanded definition of "intangible personal property" so that the "intangible personal property" defined under that statute was not included in the "property" of centrally assessed corporations. Or Laws 1977, ch 602, § 1(4); *Southern Pacific Trans. Co. v. Dept. of Rev.*, 295 Or 47, 62 n 17, 664 P2d 401 (1983) (SB 113 excluded centrally assessed taxpayers from the expanded definition of intangible personal property).

Also as part of SB 113, the legislature simultaneously amended ORS 308.510(1) to exclude certain "intangible property" from the definition of "property" subject to central assessment. Or Laws 1977, ch 602, § 2. In doing so, the legislature was codifying the department's practice of not taxing specific intangible property for centrally assessed companies. *See* Tape Recording, House Revenue and School Finance Committee, SB 113, June 28, 1977, Tape 37, Side 1 (statement of Ira Jones) (explaining that bill codified department's policy of not valuing certain types of intangible property of centrally assessed companies, such as money at interest, bonds, notes, etc.).

If we glean anything from the legislative history, it is that the legislature did not consider the effect of SB 113 on the exemption for *tangible* personal property consisting of inventory. Rather, the legislature's purpose in enacting SB 113 was to define the intangible personal property of locally assessed and centrally assessed taxpayers differently—in effect, to expand the scope of exempted intangible personal property for locally assessed taxpayers and to narrow the scope of taxed intangible property for centrally assessed taxpayers. True, the 1977 amendments to ORS 307.020 removed centrally assessed taxpayers not only from the statutory definition of *intangible* personal property, but also from the statutory definition of *tangible* personal property. *See* Or Laws 1977, ch 602, § 1(4). However, considering the bill's focus on intangible personal property, we decline to conclude that the legislature, in doing so, intended that provisions in the tax code applying to "tangible personal property"—including

ORS 307.400—would no longer apply to centrally assessed taxpayers.

Accordingly, we agree with the Tax Court that, although the definition of "tangible personal property" in ORS 307.020 does not apply to centrally assessed companies, it does not follow that the business inventory exemption statute, ORS 307.400, does not apply to those taxpayers. Rather, it means only that, for centrally assessed taxpayers, the term "tangible personal property" in ORS 307.400 is not statutorily defined. That, in turn, means that we will look to the plain, natural, and ordinary meaning of the term to determine its meaning. If the property is "tangible personal property" under the plain and ordinary meaning of that term (and also meets the use requirement under ORS 307.400, *viz.*, that the property is or will be stock in trade held for sale in the ordinary course of business), then the property is entitled to the business inventory exemption.

B. *The department's alternative contentions.*

We next address the department's alternative arguments that, even if ORS 307.020 does not render the business inventory exemption inapplicable to centrally assessed taxpayers, the statutory scheme as a whole demonstrates that the legislature did not intend the business inventory exemption to apply to centrally assessed taxpayers. The department relies on the following in support of that contention: (1) contextual provisions in ORS chapter 307 and the central assessment statutory scheme; (2) the legislative history of ORS 307.400; and (3) the method of valuation for centrally assessed property. We consider each in turn.

1. *ORS chapter 307's relationship to the central assessment scheme*

The department's first theory is that certain contextual clues in the statutory scheme reveal that the legislature did not intend the business inventory exemption to apply to centrally assessed property: (1) "inventories" of centrally assessed taxpayers are expressly assessable; and (2) the business inventory exemption statute neither expressly references the central assessment statutes, nor is it part of the

central assessment scheme. As we explain below, none of the department's propositions is convincing.

According to the department, the fact that the legislature expressly included "inventories" as "property" that is assessable under ORS 308.510(1) demonstrates that the legislature did not intend to exempt that property from taxation. The department's contention on that point is necessarily premised on its view that "assessment" is synonymous with "taxation." That is, the department urges that "[a]ll property listed in ORS 308.510(1) is taxable under the central assessment statutes, if used or held by a company in a business designated as centrally assessed under ORS 308.515." Because the term "inventories" is included in the scope of centrally assessed "property," the department contends inventories are, in turn, taxable. Taxpayer, on the other hand, argues that it is irrelevant whether "inventories" [are] included in the scope of property that is centrally assessed, because that merely determines how the property is to be assessed (*i.e.*, centrally or locally), not whether it is taxed.

We decline to engage in the complicated and nuanced analysis of whether and when "assessment" is "taxation." That is so, because, even if we were to agree with the department that, as a general rule, property that is assessed is ultimately taxed, the legislature has clearly demonstrated that there are express exceptions. That is, some "property" expressly assessable under ORS 308.510(1) ("all property" used or held by a company under ORS 308.515(1) required to be centrally assessed) is exempt from taxation. *See, e.g.*, ORS 308.558(5) (exempting aircraft of foreign-owned carriers); ORS 308.559(2)(a) (exempting aircraft undergoing major work); ORS 308.665(1) (exempting private railroad cars undergoing major work). Accordingly, the department's contention is refuted by the statutory scheme itself.[10]

---

[10] Neither does the legislative history of ORS 308.510(1) provide support for the department's contention. The legislature added the term "inventories" to ORS 308.510(1) in 1957, years before the personal property tax imposed on "inventory" was phased out under the predecessor statutes to ORS 307.400 in 1965. *See* Or Laws 1957, ch 711, § 2. Accordingly, the legislature did not consider how adding "inventories" to centrally assessed property would be affected by the later-enacted business inventory exemption. Rather, the legislature added the term "inventories," as well as other terms, to clarify that certain utility property was to be assessed by the department (then the State Tax Commission), rather than county assessors. Minutes, Senate Taxation Committee, Apr 30, 1957, 4.

The department next asserts that when the legislature provides a tax exemption for centrally assessed property, it does so only by either codifying the exemption within the central assessment scheme (*i.e.*, ORS 308.505 to 308.665) or by expressly referencing the central assessment statutes. According to the department, because the business exemption statute meets neither criterion, it does not apply to centrally assessed taxpayers.

We disagree with the department's premises and, therefore, with its conclusion. We first disagree with the department's contention that, when the legislature has provided a tax exemption for centrally assessed taxpayers, it has done so only within the central assessment statutory scheme. True, the central assessment statutes do contain provisions that exempt centrally assessed property from taxation, as well as provisions that designate certain property as not centrally assessable. *See, e.g.,* ORS 308.558(5) (exempting aircraft of foreign-owned carriers); ORS 308.559(2)(a) (exempting aircraft undergoing major work); ORS 308.665(1) (exempting private railroad cars undergoing major work); ORS 308.510(1) (excluding certain intangible property from central assessment); ORS 308.515(3) (excluding specific property from central assessment—*e.g.,* property of interstate ferries). However, those provisions, by their terms, apply only to centrally assessed property, and not to locally assessed property. *See* ORS 308.510(1) ("intangible personal property" subject to central assessment); ORS 308.515(1) (property of air transportation, water transportation, and private railcar transportation companies subject to central assessment). It makes particular sense for the legislature to include them in the central assessment scheme because, as a practical matter, they apply to nothing else. The fact that the legislature has included tax exemptions for centrally assessed property in the central assessment scheme thus does not foreclose the possibility that it has and also would do so through the exemption and taxation provisions in ORS chapter 307. Rather, an exemption that applies more generally to both locally and centrally assessed property would more appropriately be located in ORS chapter 307—a chapter of general applicability.

To the extent that the department suggests that ORS chapter 307 and the central assessment statutes are two separate schemes of taxation—in addition to separate schemes for assessment—we further disagree. The legislature has expressly differentiated the assessment processes for centrally assessed and locally assessed property. *See* ORS 308.005 - 308.343 (general assessment scheme); ORS 308.505 - 308.665 (central assessment scheme); *D. R. Johnson Lumber Co.*, 318 Or at 335-36 (explaining the provisions of general applicability and the particular assessment schemes in ORS chapter 308). ORS chapter 307, on the other hand, is not about assessment at all. It is a chapter pertaining to taxation and exemption, and contains no provision limiting its application to locally assessed taxpayers. Thus, ORS chapter 307 is a chapter of general applicability. At the very least, if the legislature intended to create a separate system of taxation and exemption for centrally and locally assessed taxpayers, it has neither declared as much nor structured the statutes in that way.

We acknowledge that, in certain circumstances, the legislature has expressly treated the taxation and exemption of the two categories of taxpayers differently. *See, e.g.*, ORS 307.030(2) (taxing intangible personal property of centrally assessed taxpayers and exempting it for all others).[11] But that fact is further evidence that the taxation and exemption provisions in ORS chapter 307 generally encompass centrally assessed taxpayers, because the legislature has demonstrated that it knows how to expressly exclude centrally assessed taxpayers from those provisions when it opts to do so. Because ORS 307.400 does not expressly remove centrally assessed property from its reach, the most natural conclusion

---

[11] *See also* ORS 307.220 (exemption for certain property of nonprofit mutuals or cooperative telephone associations "shall not apply to any parcel of land or building owned by any such association, which land or building shall be assessed and apportioned by the [department] in accordance with existing law"); ORS 307.330(1) ("[e]xcept for property centrally assessed by the [department]," certain commercial facilities under construction are exempt from taxation); ORS 307.090(1) ("[e]xcept as provided by law," certain public property is exempt from taxation); *Pacificorp Power Marketing v. Dept. of Rev.*, 340 Or 204, 211, 131 P3d 725 (2006) (central assessment statutes provide for taxation of property otherwise exempt under ORS 307.090(1), the public property tax exemption, because that exemption statute contains an "except as provided by law" clause).

to draw is, as we have described, that the legislature intended that the exemption apply to centrally assessed and locally assessed taxpayers alike.

The department disagrees and asserts that any provisions that expressly remove centrally assessed property from the scope of a statute's exemption are merely "redundant." Citing *Thomas Creek Lumber and Log Co. v. Dept. of Rev.*, 344 Or 131, 138, 178 P3d 217 (2008), the department argues that the legislature is not prohibited from "saying the same thing twice." According to the department, the fact that ORS 307.400 does not contain such a "redundant reference" does not mean that its exemption must be applied to centrally assessed property.

Again, we disagree. In *Thomas Creek Lumber and Log Co.*, this court adopted the department's proposed interpretation of a tax code statute over the taxpayer's: "although the department's interpretation * * * does lead to a redundancy in [one subsection of the statute], taxpayer's interpretation [was] more problematic," because it impermissibly omitted words from and rendered entirely without effect a subsection of another statute. *Id.* at 137. The court reasoned that, although the department's interpretation made some words in another statute redundant, "nothing prohibits the legislature from saying the same thing twice." *Id.* at 138. The court further reasoned that the department's interpretation was preferable, because it would " 'give effect to' more of the 'provisions or particulars' of both statutes than [the] taxpayer's proposed interpretation." *Id.* (quoting ORS 174.010).

Contrary to the department's position, *Thomas Creek Lumber and Log Co.* does not stand for the broad principle that an interpretation rendering provisions of a statute redundant is generally permissible. The general rule is that this court interprets statutes to give effect to all provisions. *See* ORS 174.010 ("where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all"); *Union Pac. R. R. Co. v. Bean*, 167 Or 535, 549, 119 P2d 575 (1941) (a construction of a statute that renders certain provisions unnecessary will not be adopted by the court, and "it should not be presumed that any provision is redundant or useless"). *Thomas Creek Lumber and Log Co.*

does not conflict with that general rule. Rather, it stands for the more modest proposition that an interpretation rendering a provision redundant is preferable when it gives effect to *more* provisions or particulars of the applicable statutes than would some other interpretation.

The department suggests that that would be the case here, arguing that taxpayer's proposed interpretation "omits and renders ineffective the substantive definition of assessable property in the form of 'inventories,' 'appliances,' 'merchandise,' and 'all other goods' in ORS 308.510(1)." As already noted, however, 347 Or at 553-54, property may be both centrally *assessed* and *exempt* from taxation. Thus, taxpayer's proposed construction would not render those provisions inoperable. Moreover, even were we to assume, *arguendo*, that taxpayer's proposed interpretation would render ineffective the provision in ORS 308.510(1) requiring assessment of "inventories," the department's proposed interpretation would render several more provisions—the multiple provisions in ORS chapter 307 removing centrally assessed taxpayers from the statutes' effect—useless. Accordingly, the department's proposed construction is not preferable under the circumstances.

We also disagree with the department that, when the legislature provides a tax exemption for centrally assessed property outside the central assessment scheme, the legislature uniformly does so by expressly cross-referencing the central assessment statutes. That contention is foreclosed by the existence of exemption statutes in ORS chapter 307 that are silent as to central assessment, but that necessarily apply to centrally assessed property. For example, as the department concedes, ORS 307.126 (exempting Federal Communications Commission licenses) applies to the property of centrally assessed taxpayers under ORS 308.515(1)(n) ("[c]ommunication" companies subject to central assessment), even though the statute does not refer expressly to those taxpayers or otherwise reference the central assessment statutes. *See* ORS 307.205 (exempting real property owned by a railroad that is temporarily being put to a public alternate transportation use).[12]

---

[12] We acknowledge that the legislature, in at least one provision in ORS chapter 307, has used express language to bring centrally assessed taxpayers or

Based on the foregoing analysis of the text and context, we conclude that the legislature did not intend to limit the business inventory exemption statute, ORS 307.400, to locally assessed taxpayers.

2. *The legislative history of ORS 307.400*

The department next asserts that the historical context and legislative history of ORS 307.400 reveal that the legislature intended to provide relief from the personal property tax only as to locally assessed, not centrally assessed, business inventory. The legislature first provided a partial tax exemption for business inventory in 1965, under the Inventory Tax Relief Act, codified at *former* ORS 310.605 to 310.625 (1965), *repealed by* Or Laws 1969, ch 612, § 5. *See* Or Laws 1965, ch 604, §§ 1-12 (HB 1498). The Inventory Relief Act reduced the personal property tax on inventory based on a percentage calculation. *Former* ORS 310.605. The major purposes of phasing out the taxation of inventory were to create new businesses in Oregon, prevent employee cutbacks, and reduce the seasonal aspect of Oregon's economy.[13] Tape Recording, House Committee on Taxation, HB 1498, Mar 16,

---

properties within the statute's exemption. *See* ORS 307.090(3)(a) ("[n]otwithstanding ORS 308.505 to 308.665," certain out-of-state publicly owned property is exempt from taxation). That "notwithstanding" clause operates to override any provisions in the central assessment statutes that conflict with ORS 307.090(3)(a). The clause comes after an "except as provided by law" clause in ORS 307.090(1) that operates to remove centrally assessed property from the exemption. *See Pacificorp Power Marketing,* 340 Or at 211 ("except as provided by law" clause means that the exemption does not apply to centrally assessed property). Thus, the "notwithstanding" clause is necessary to clarify that the exemption under subsection (3) of that statute applies to centrally assessed taxpayers, even though the exemption in subsection (1) does not. Accordingly, that "notwithstanding" clause does not support the contention that exemption statutes in ORS chapter 307 do not apply to centrally assessed taxpayers unless the statutes expressly reference the central assessment statutes.

[13] Near the end of the calendar year, due to the personal property tax on inventory, it was common for Oregon businesses to "bottom out" their inventory by ceasing to buy additional inventory, cutting down on their fabricating crews, laying off employees, discontinuing purchases of tools or equipment, and curtailing certain production. Minutes, Senate Committee on Taxation, Apr 26, 1965, 7 (statement of Charles Wright, Mercer Steel). The seasonal aspect of Oregon's economy, which caused a "major force" in "temporary unemployment," made up a significant portion of the testimony before the legislature both in 1965 and again in 1969. *See, e.g., id.* at 2-6; Tape Recording, House Committee on Taxation, HB 1498, Mar 16, 1965, Tape 16, Side 1 (statement of Sen Victor Atiyeh); Minutes, Senate Committee on Taxation, Apr 26, 1965, 4 (statement of James Sommers, Container Corporation); Minutes, Senate Committee on Taxation, May 13, 1969, 2.

1965, Tape 16, Side 1 (statement of Sen Victor Atiyeh). The legislature was also concerned with how the personal property tax on inventory affected Oregon businesses' ability to compete in the market, because other states had a relatively small tax on inventory. *See* Minutes, Senate Committee on Taxation, Apr 26, 1965, 3, 7.

In 1969, the legislature repealed the 1965 Inventory Tax Relief Act, Or Laws 1969, ch 612, § 5, and enacted a permanent tax reduction program for the personal property tax imposed on inventory, codified at *former* ORS 310.608 (1969), *renumbered as* ORS 307.400 (1981). Or Laws 1969, ch 612, §§ 1, 2 (HB 1214). *Former* ORS 310.608(1) provided an exemption for the taxpayer's inventory, one that increased at a rate of five percent per year for four years, and 10 percent per year thereafter. A complete exemption was enacted in 1979. Or Laws 1979, ch 692, § 5. The statute was renumbered as ORS 307.400 in 1981. During hearings on the 1969 bill, the legislature again heard concerns from industry regarding Oregon's seasonal economy. Minutes, Senate Taxation Committee, May 13, 1969, 2 (statement of Douglas Heider, Retail Council Director of Associated Oregon Industries). The legislature expressed concern that Oregon was falling behind other western states in inventory tax relief and was continuing to lack competitiveness in the market. *Id.* (statement of Rep Jason Boe).

The department cites portions of the 1965 Inventory Tax Relief Act, as well as several statutes that predated that act, in support of its contention that the legislature never intended for the business inventory exemption to benefit centrally assessed taxpayers.[14] The department's basic theory is that centrally assessed property "was not subject to the *locally assessed* ad valorem tax on inventory" (emphasis in original) and, thus, was not intended to benefit from the exemption.

---

[14] *See, e.g., former* ORS 317.074 (1955), *repealed by* Or Laws 1969, ch 520, § 49 (providing centrally assessed companies a corporate excise tax offset for personal property taxes paid); *former* ORS 317.085 (1955), *repealed by* Or Laws 1957, ch 607, § 10 (general corporate excise tax offset for personal property taxes paid); Or Laws 1965, ch 604, § 5 (1965 Inventory Tax Relief Act required counties to calculate and report to State Tax Commission the "dollar amount of *locally assessed* inventory taxes levied" (emphasis added) for the fiscal year).

We find nothing in either the 1965 Inventory Tax Relief Act or the statutes predating that act that leads us to conclude either that a separate "tax on inventory" existed or that it applied only to locally assessed taxpayers. The property tax imposed on inventory was the property tax on "tangible personal property"—and that tax applied generally. *See* ORS 307.030(1) (1965) ("[a]ll * * * tangible personal property * * * shall be subject to assessment and taxation"). Further, the main purpose behind the 1965 Inventory Tax Relief Act convinces us that the legislature wanted to reduce—and ultimately exempt—the personal property tax on inventory for all Oregon businesses that held inventory for sale. As noted, the legislature was concerned with the seasonal aspect of Oregon businesses holding inventory for sale, which affected their ability to compete in the market because other states were not taxing inventory. Considering the purpose behind the legislation, we see no reason why a centrally assessed company holding inventory for sale—and thus, suffering from similar seasonal hardships—would not have been an equal target of the 1965 and 1969 legislation.[15] Accordingly, the legislative history provides no basis to conclude that the legislature intended to exclude centrally assessed taxpayers either from the phasing out of personal property tax imposed on inventory, or from its ultimate exemption.[16]

---

[15] Certainly, the legislature recognized that the "small merchant" would especially benefit from the permanent inventory reduction program. Minutes, House Committee on Taxation, Mar 24, 1969, 1. However, legislative recognition that a sector of Oregon businesses (small merchants) would especially benefit from the legislation more than others (large merchants and utilities) does not foreclose legislative intent that those large entities—if also holding inventory for sale and, thus, coming within the target of the legislation—also receive some benefit from the legislation, even if that benefit would be less obvious or common. *See* Minutes, Joint Ways and Means Committee, May 5, 1965, 275 (statement of Sen Victor Atiyeh) (stating that helping merchants is one thing, but the most important approach is to help the economy of Oregon). At the very least, there is simply nothing in the legislative history to suggest that the legislature considered large utilities and other centrally assessed companies and, in turn, intended to exclude them from the ambit of the statute.

[16] One version of the 1965 Inventory Tax Relief Act—a version that the legislature ultimately rejected—provided for a "net business tax" to replace revenue lost from the phase-out of property tax on inventory. *See* Minutes, Senate Committee on Taxation, Apr 26, 1965, 1, 2 (statement of Sen Victor Atiyeh) (explaining net business tax proposed by the House). The department relies on testimony from Douglas Heider, Retail Council Director of Associated Oregon Industries, at an August 8, 1964, meeting of the Interim Committee on Taxation, in which Heider

### 3. *Method of valuation for centrally assessed property*

Under its third theory, the department asserts that the method of valuation prescribed by the legislature for centrally assessed property is not conducive to identifying, valuing, or exempting inventory. In assessing property subject to central assessment, the department's assessors engage in "unit valuation" based on information provided by the company in its annual statement. ORS 308.520; ORS 308.555. The unit valuation includes property both within and without the State of Oregon. ORS 308.555. Once the department ascertains the assessable property in Oregon, it apportions the assessed values to each of the counties. *Id.*; ORS 308.565.

As the department explains, unit valuation, as a method of assessment, does not separate "real" from "personal" property, or "tangible" from "intangible" property. Neither does unit valuation identify a separate value for "inventory." The department thus urges that unit valuation does not provide a means by which business inventory can be separately valued and exempted from the value of the unit. The department, however, again ignores the fact that several statutes exempt from taxation certain property that is subject to central assessment—and, thus, unit valuation. *See, e.g.,* ORS 308.665 (exempting railroad cars owned by private car companies undergoing major work). Those statutes foreclose the department's contention that unit valuation precludes, or is otherwise impossible to reconcile with, the valuation and exemption of individual types of centrally assessed property.

Furthermore, Oregon has adopted the Western States Association of Tax Administrators, *Appraisal Handbook: Valuation of Utility & Railroad Property* (1989)

---

proposed that centrally assessed companies should be exempt from the "net business tax." *See* Minutes, Interim Committee on Taxation, Aug 8, 1964, 6 (explaining that, because there is no effective way of segregating inventory to give relief from the tax, centrally assessed companies gain no benefit and pay no additional tax). His comments were made to a 1964 interim committee in support of a *potential* tax that was ultimately rejected by the legislature. Or Laws 1965, ch 604, §§ 8, 8a. Moreover, as explained *post*, 347 Or at 561-63, Heider's reasoning was incorrect—that is, he based his conclusion on the incorrect premise that there was no effective way of segregating assessed inventory from the unit value. We therefore decline to place any weight on Heider's comments in determining the legislature's ultimate intent.

(WSATA Handbook) as the official valuation guide for centrally assessed property in this state. OAR 150-308.205-(B). Included in the WSATA Handbook is a prescribed uniform procedure for separating tax exempt property from the unit valuation. The WSATA Handbook explains that, although generally "no attempt is made to assign values in a unit appraisal to individual items of property," such value must be assigned if "it is a legal requirement." WSATA Handbook at 8. The WSATA Handbook thus aims to provide "consistent application of allocation techniques for removing nontaxable property from the unit valuation." *Id.* at 10. The WSATA Handbook further specifies that, under any of several methods of unit valuation, the appraiser must specifically identify and account for exempt property to be excluded from the valuation. *See, e.g., id.* at 22-23, 38 (appraisers engaged in "cost method" are required to exclude property exempt from property taxation; common exclusions include "inventory"); *id.* at 70, 76 (adjustments to "income approach" are required to account for assets not taxable); *id.* at 98 (value contribution of nontaxable assets must be removed from the stock and debt indicator under the "stock and debt approach").

The department has also acknowledged, via promulgation of its own administrative rule, that assessors are required to value, and remove from the unit, exempt property. The department mandates that the unit value for gas distribution companies be adjusted to exclude "nontaxable" property included in the unit. OAR 150-308.205-(B)(2)(b). That rule forecloses the department's contention that identifying exempt property and removing it from the unit valuation is impossible or unreasonable.

Finally, we observe that, in this case, the department had before it the information necessary to exempt the disputed property. Specifically, taxpayer's annual report expressly identified the property at issue in such a way that the assessed value of that property could be removed from the unit valuation of taxpayer's property. *See also* ORS 308.525(9) (annual statement must contain a detailed statement of personal property located in Oregon owned by the centrally assessed company); WSATA Handbook at 13 ("[m]andatory reporting usually requires a detailed listing of

all items of taxable property with descriptions and original cost"). Thus, the practicality argument that the department makes finds no support in the statutory scheme or in the record in this case.

Accordingly, the method of valuation prescribed by the legislature for centrally assessed property does not convince us that it is impossible to value and exempt inventory subject to central assessment. We therefore decline to read into ORS 307.400 a limitation—*i.e.*, an exemption for locally assessed property only—that the statute does not contain and that the broader statutory scheme does not compel.

## IV. CONCLUSION

In sum, an analysis of the text and context of the business inventory exemption statute, ORS 307.400, as well as its legislative history, leads us to conclude that the exemption is not limited to locally assessed taxpayers. We therefore hold that the business inventory exemption prescribed in ORS 307.400 applies generally to exempt the "inventory" of all "taxpayers," including taxpayers whose property is subject to central assessment pursuant to ORS 308.505 to 308.665.[17] Accordingly, in determining whether centrally assessed property qualifies as "inventory," we look not to the definition of "tangible personal property" in ORS 307.020; rather, we must determine: (1) whether the property is "tangible personal property" under the plain and ordinary meaning of that term; and (2) whether the property meets the use requirement under ORS 307.400, *viz.*, whether the property is or will be stock in trade held for sale in the ordinary course of business. It follows that, because the parties stipulated that taxpayer's gas reserves and retail appliances are "tangible personal property," and the parties do not otherwise dispute that the property meets the "use" requirement under ORS 307.400, taxpayer is entitled to a property tax exemption under ORS 307.400 for the subject property.

The judgment of the Tax Court is affirmed.

---

[17] Because we hold that the business inventory exemption applies to the "inventory" of centrally assessed taxpayers, we do not reach taxpayer's alternative argument, *viz.*, that its retail appliances were not subject to central assessment and, thus, exempt nonetheless.