58 April 25, 2022 No. 3

## IN THE OREGON TAX COURT
## REGULAR DIVISION

D.E. SHAW RENEWABLE INVESTMENTS, L.L.C.;
Benson Creek Windfarm, LLC; Durbin Creek Windfarm, LLC;
Jett Creek Windfarm, LLC; Prospector Windfarm, LLC;
and Willow Springs Windfarm, LLC,
*Plaintiffs,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Defendant.*

(TC 5421)

On cross-motions for summary judgment, Plaintiffs argued that the Department of Revenue could hear a petition to order a change or correction to prior-year central assessment rolls under ORS 306.115(3). Defendant Department of Revenue argued against this interpretation, arguing that Defendant cannot order itself to make a change and that, in any event, Plaintiff's requested change amounts to correction of an error in valuation judgment, which ORS 308.624(4) prohibits. The court, after examining the text, context, and legislative history of ORS 306.115(3), concluded that a change or correction for centrally assessed property necessarily entails changing not only the central assessment roll but also the local rolls, and only the latter change results in a refund of tax. Therefore, a petition under ORS 306.115(3) ultimately seeks the same relief, regardless of whether the property at issue is centrally or locally assessed. However, although the petition process is generally available, the court determined that ORS 308.624(4) prohibits the specific relief Plaintiffs sought: a correction of the Department's opinion of the value of the subject property.

Oral argument on cross-motions for summary judgment was held remotely on July 6, 2021.

Eric J. Kodesch, Lane Powell PC, Portland, filed the motion and argued the cause for Plaintiff.

Marilyn J. Harbur, Senior Assistant Attorney General, Department of Justice, Salem, filed the cross-motion and argued the cause for Defendant, Department of Revenue.

Decision rendered April 25, 2022.

**ROBERT T. MANICKE, Judge.**

In this case involving centrally assessed property for tax years 2018-19 and 2019-20, the parties present

cross-motions for summary judgment regarding the authority of Defendant Department of Revenue (the department) to hear a petition from Plaintiffs (collectively, taxpayer) to order a change or correction under ORS 306.115(3).[1]

## I. FACTS

At all relevant times, taxpayer owned the subject property, consisting of five wind farms in Malheur and Baker Counties, which is centrally assessed by the department pursuant to ORS 308.505 to 308.674.[2] For tax years 2018-19 and 2019-20, taxpayer did not file annual statements, as required of centrally assessed taxpayers under ORS 308.520 to 308.525, which would have reported financial and production information, including data on revenue and expenses. The department issued Notices of Proposed Assessment (NOPAs) under ORS 308.582; taxpayer did not request a conference with the department's director (the Director) pursuant to ORS 308.584; and the proposed assessments became final.

For tax year 2020-21, taxpayer filed all required annual statements. The department issued a NOPA with respect to the subject property, and taxpayer requested a conference with the Director under ORS 308.584. At the conference, taxpayer advocated for a lower real market value for the property based on an income approach indicator that relied on a blend of "peak" and "off-peak" rates under contracts to sell the electricity, rather than solely peak rates as may have been used in the department's valuation. Taxpayer also proposed using a higher amount of projected expenses. After the conference, the department used taxpayer's estimated contract rate projections and

---

[1] Unless otherwise indicated, references to the Oregon Revised Statutes (ORS) are to the 2017 edition.

[2] The pleadings establish that the property was owned by the latter group of Plaintiffs excluding D.E. Shaw Renewable Investments, L.L.C. (DE Shaw). The parties' filings do not establish the relationship between DE Shaw and those Plaintiffs or the property; however, the department assessed the property in the name of DE Shaw and does not contest DE Shaw's standing. The court assumes for purposes of this order that DE Shaw either is part of the "company" for purposes of ORS 308.515(1) or that DE Shaw "uses" the property within the meaning of that section. *See* ORS 308.505(13) (defining "company" and related terms); *PacifiCorp Power Marketing v. Dept. of Rev.*, 340 Or 204, 216-18, 131 P3d 725 (2006) (analyzing "use").

estimated expense projections in determining a lower real market value, which the department then presented in its Opinion and Order for tax year 2020-21.

On or about September 8, 2020, taxpayer sent a letter to the Director asking her to order similar real market value reductions for tax years 2018-19 and 2019-20 under her supervisory authority pursuant to ORS 306.115. The letter specifically requested "a refund of overpaid taxes" as well as interest. On November 9, 2020, the Director responded with a letter denying taxpayer's request for a change in value for tax years 2018-19 and 2019-20. Taxpayer filed a complaint in the Magistrate Division, and the Regular Division granted the parties' joint petition to specially designate the case for hearing in the Regular Division.

## II.   ISSUES

(A)   May a taxpayer petition the Department for relief with respect to centrally assessed property under ORS 306.115(3)?

(B)   Does ORS 308.624(4) prohibit the Department from making taxpayer's requested correction to the central assessment roll?

## III.   ANALYSIS

As discussed below, ORS 306.115(3) gives the Department discretion, in certain circumstances, to "order a change or correction" to an assessment or tax roll for certain tax years outside the normal process for appeal, without restricting the Department's authority to change the real market value of the property to correct an error in valuation judgment. Taxpayer argues that the remedy under ORS 306.115(3) is available for its centrally assessed property. Taxpayer reads ORS 306.115(3) as allowing the department to do either of the following: (a) to order a local assessor or other county official to change or correct the county assessment or taxation roll; or (b) to issue an order changing or correcting the central assessment roll, which the department creates and maintains under ORS 308.610 to 308.636. The department contends that only interpretation (a) is permissible: ORS 306.115(3) must be read solely to allow the

department to order a local assessor or other county official to change or correct the county assessment or taxation roll. The department posits that an order under ORS 306.115(3) must be directed to someone other than the department itself. Under the department's reading, ORS 306.115(3) does not authorize the department to change or correct the central assessment roll.

In any event, the department argues, ORS 308.624(4) expressly prohibits the department from "correct[ing] an error in valuation judgment that is an error in the department's opinion of the value of property." According to the department, as the later-enacted statute, ORS 308.624(4) controls even if ORS 306.115(3) does not bar taxpayer's petition. Taxpayer responds that ORS 308.624(4) does not apply because that statute does not refer to ORS 306.115(3). As further support for its position, taxpayer refers to a case, decided by the courts on substantive legal grounds, in which the department had denied relief under ORS 306.115(3) on those same grounds without raising the fact that the taxpayer was subject to central assessment. *See Northwest Natural Gas Co. v. Dept. of Rev.*, 347 Or 536, 226 P3d 28 (2010), *aff'd*, 19 OTR 367 (2007).

A.  *May a centrally assessed taxpayer petition the department for relief under ORS 306.115(3)?*

The court begins by determining whether relief under ORS 306.115(3) is generally available for centrally assessed property, as it is for locally assessed property. The court employs the statutory interpretation framework prescribed in *State v. Gaines*, examining the text, context and relevant legislative history of ORS 306.115(3). 346 Or 160, 171-72, 206 P3d 1042 (2009). The text states:

> "The department may order a change or correction applicable to a separate assessment of property to the assessment or tax roll for the current tax year and for either of the two tax years immediately preceding the current tax year if for the year to which the change or correction is applicable the department discovers reason to correct the roll which, in its discretion, it deems necessary to conform the roll to applicable law without regard to any failure to exercise a right of appeal."

1.  *Relevant text and date of use*

As an initial matter, the court must identify the portions of statutory text that require interpretation and determine when the legislature created this text, so that the court can then look to contemporaneous sources to discern the meaning of terms not defined by statute. *See Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296 n 7, 337 P3d 768 (2014) (citing *State v. Perry*, 336 Or 49, 53, 77 P3d 313 (2003)). The legislature enacted ORS 306.115 in 1983. *See* Or Laws 1983, ch 605, § 1. However, it did so by combining three provisions that at that time were codified as ORS 305.090 (1981) (supervisory power), ORS 306.111 (1981) (same), and ORS 311.205(2) (1981) (roll corrections). *See Gray v. Dept. of Rev.*, 23 OTR 220, 244 (2018) (tracing history of ORS 306.115). The 1983 law retained substantial portions of the three predecessor provisions. To illustrate, the court sets out the three pre-1981 provisions next to the 1983 text (as subsequently amended to its current form), emphasizing selected text to be discussed below.

| Statutes Existing as of 1983 Legislative Session | 1983 Law (Or Laws 1983, ch 605, § 1, codified as ORS 306.115, as amended through 2017) |
|---|---|
| **ORS 305.090 (1981).**   The Department of Revenue shall exercise general supervision of the system of taxation throughout the state, and general supervision and control over the administration of the assessment and tax laws and over county assessors and county boards of equalization in the performance of their duties relating to taxation to the end that all taxable property is assessed uniformly according to law and equality of taxation according to law is secured.<br><br>**ORS 306.111 (1981).**   The Department of Revenue may do any act or give any order to any county board of equalization or county assessor as to the valuation of any property or class of property which the department deems necessary so that all taxable property is assessed according to law and equalized between taxpayers, between counties and between taxing units to the end that equality of taxation according to law shall be secured. | **ORS 306.115(1) (2017).**<br><br>(1)  The Department of Revenue shall exercise general supervision and control over the system of property taxation throughout the state. The department may do any act or give any order to any public officer or employee that the department deems necessary in the administration of the property tax laws so that all properties are taxed or are exempted from taxation according to the statutes and Constitutions of the State of Oregon and of the United States. Among other acts or orders deemed necessary by the department in exercising its supervisory powers, the department may order the correction of clerical errors, errors in valuation or the correction of any other kind of error or omission in an assessment or tax roll as provided under subsections (2) to (4) of this section. |

| **Statutes Existing as of 1983 Legislative Session** | **1983 Law (Or Laws 1983, ch 605, § 1, codified as ORS 306.115, as amended through 2017)** |
|---|---|
| **ORS 311.205 (1981).** | **ORS 306.115(2)-(6) (2017).** |
| (2) Whenever a clerical error, error in valuation, or an error or omission of any other kind is called to the attention of the department, the *department may order the correction of the roll* as a part of its supervisory authority under ORS 305.090 and 306.111, as follows: | (2) The department may order a change or correction to the assessment or tax roll for the current tax year applicable to all real or personal property of the same class or in the same area if the order of the department is mailed not later than October 15 of the current tax year. |
| (a) A change or correction applicable to all real or personal property of the same class or in the same area may be made to the roll for the current assessment year if a written request is made to the department or the order of the department is mailed not later than August 15 of such year. | (3) *The department may order a change or correction applicable to a separate assessment of property to the assessment or tax roll for the current tax year and for either of the two tax years immediately preceding the current tax year if for the year to which the change or correction is applicable the department discovers reason to correct the roll which, in its discretion, it deems necessary to conform the roll to applicable law without regard to any failure to exercise a right of appeal.* |
| (b) *A change or correction applicable to a separate assessment of property may be made to the assessment roll for the current assessment year and for either or both of the last two preceding years, when the following conditions exist as to each year for which correction is requested of the department in writing:* | |
| (A) *The taxpayer claims for any reason that the assessment of his property has resulted in an excessive valuation in an amount of at least $ 2,000 or five percent of assessed value, whichever is greater; and* | (4) Before ordering a change or correction to the assessment or tax roll under subsection (3) of this section, the department may determine whether any of the conditions specified in subsection (3) of this section exist in a particular case. If the department determines that one of the conditions specified does exist, the department shall hold a conference to determine whether to order a change or correction in the roll. |
| (B) *The taxpayer has no statutory right of appeal remaining.* | |
| As used in this subsection, "current assessment year" is the assessment year in which a written request is made to the department for the correction of the claimed erroneous assessment or assessments. | (5) For purposes of this section, "current tax year" means the tax year in which the need for the change or correction is brought to the attention of the department. |
| * * * * * | |
| (4) The remedies under this section are in addition to other remedies provided by law, including but not limited to those available under ORS 305.285. | (6) The remedies provided under this section are in addition to all other remedies provided by law. |

As applied to this case, both the pre-1983 version of ORS 311.205(2) and ORS 306.115(3) include the same key

terms: the department's authority to "order" a "change or correction" to the "roll" or the "assessment or tax roll." As will be seen, the terms "change or correction" and "assessment or tax roll" are defined or described in other statutes, and the court must apply those usages rather than resort to dictionary definitions. *See Comcast*, 356 Or at 295-96. The statutes do not, however, define "order." The statute uses this term as a transitive verb, with the object "change or correction." The formulation in ORS 306.115(3) is ambiguous in the sense that it does not identify the person who is to carry out the order. Although the department's position is not based strictly on the statutory text, its position implies that the person carrying out the order must be someone other than the department itself, namely, the local county assessor or other local officer in charge of the local county roll. Taxpayer's position implies that the department can "order" the change or correction to the roll without necessarily directing a person other than the department to carry out the change or correction. The court looks to plain or technical meanings of "order" to determine whether the formulation with an unidentified intended actor supports either party's position. The court finds usages of "order," with and without an identified actor, in the direct predecessors of ORS 306.115(3) and in closely related statutes enacted in 1971 and 1929.[3] The court, therefore, considers dictionary definitions from the time span 1929 to 1983.

## 2.   *Text analysis and conclusions*

The 1921 edition of *Webster's New International Dictionary* defines "order," as a transitive verb, as follows:

---

[3] A 1971 law was the direct predecessor to ORS 311.205(2) (1981). *See* Or Laws 1971, ch 472, § 3 ("Notwithstanding the time limitations for corrections contained in subsection (1) of this section, the Department of Revenue may order the correction of the rolls for a separate assessment of property for any of the last two preceding years when all of the following conditions exist ***."); *cf.* ORS 309.400 (1969) ("The department may order any county board of equalization to raise or lower the valuation of any taxable property and to add property to the assessment roll."); Or Laws 1929, ch 465, § 3 ("The tax commission shall have the power to direct and to order any county board of equalization to raise or lower the valuation of any taxable property and to add property to the assessment list."); *see also* Or Laws 1953, ch 22, § 1 (amending 1929 law to change "assessment list" to "assessment roll").

"1.   To put in order; to reduce to a methodical arrangement; to arrange in a series, or with reference to an end; specif., to draw up in battle array. *Archaic*.

"2.   Hence, to regulate; dispose; direct; rule; manage.

"\* \* \* \* \*

"4.   To give an order for; to secure by an order; as, to *order* a carriage; to *order* groceries.

"5.   To give an order to; to command; as, to *order* troops to advance.

"\* \* \* \* \*

"Syn. – See COMMAND.

"\* \* \* \* \*"

*Webster's New Int'l Dictionary* 1516 (1921) (obsolete and ecclesiastical definitions omitted; emphasis in original). The court finds definitions 2, 4, and 5 most relevant and considers either of definitions 2 or 4 applicable to "order" as used in ORS 306.115(3): the department might "direct" a change or correction, or it might "give an order for" a change or correction. Definition 5 uses "order" together with an identified actor ("troops") but is otherwise indistinguishable from definition 4, as both mean "give an order." The close relationship among these definitions, some using an identified actor and some not, suggests that the term "order" does not change meaning when used with or without an identified actor.

        The 1971 and 1981 editions of *Webster's Third New International Dictionary* combine usages with identified and unidentified actors within a single definition (definition 3a), below:

"1 a (1) :  to arrange or dispose according to some plan or with reference to some end : put in a particular order : arrange in a series or sequence <~s the arts and sciences according to their value in his Christian system –H.O. Taylor) \* \* \* (3) : to put in order: make neat or orderly <~ed her dress –D.C. Peattie>

"b:   to manage by rule or regulation <~ed his affairs to the tempo of an earlier day – *Amer. Guide Series: Ind*.> <the marshal controlled and ~ed the hall –Doris M. Stenton)

(unwilling and unable to ~ their economy in effective fashion –E.S. Furniss b.1918)

"\* \* \* \* \*

*"3 a: to give orders to: COMMAND <~ed the troops to advance> <twelve such pence are ~ed to exchange for a shilling –Adam Smith> : require or direct (something) to be done <dissolving the Diet and ~ing new elections –F.A. Ogg & Harold Zink>*

"\* \* \* \* \*

"c :   to command to go or come to a specified place (was ~*ed* to a distant post) (~*ed* home for misbehavior)

"d:   to give an order for: secure by an order <having forgotten to ~ his chauffeur -Cleveland Amory> <~ a meal> <~ groceries>

"\* \* \* \* \*"

*Webster's New Int'l Dictionary* 1588 (unabridged ed 1971) (emphases added); *Webster's New Int'l Dictionary* 1588 (unabridged ed 1981) (emphasis added). The court infers that definition 3a, like the 1921 definitions 2, 4, and 5, encompasses two constructions with the same meaning, as occurs when the same verb is used in the active voice or in the passive voice. Just as a typical passive construction might omit the subject ("mistakes were made"), a phrase using "order" can either name the person who is to carry out the command ("ordered *the troops* to advance") or not ("ordering new elections"). Whether named or not, someone is commanded, directed, or required to do something.

The plain meaning does not, however, resolve the issue whether a change or correction that the department "orders" must be made by a local county assessor in charge of a local assessment or tax roll. This is because the department is not a natural person, and it therefore can act only through individuals, who could be the department's own employees acting on behalf of the department. The court finds it conceivable that the phrase "the department may order a change or correction" refers to an order directing employees of the department itself to carry out the change or correction.[4]

---

[4] The parties have not cited, nor has the court discovered, a "technical" meaning of "order" that resolves the issue, as all the legal dictionaries examined define "order" only as a noun. *See* William Edward Baldwin, Ed. *Baldwin's*

### 3.   *Context*

The court proceeds to consider the statutory context, starting with ORS 306.115(1), which establishes what is generally referred to as the department's "supervisory" authority. The first sentence authorizes the department to "do any act" (as well as to "give any order" to a public employee) in order to enforce the Uniformity Clauses of the Oregon Constitution and otherwise to ensure that property is taxed pursuant to applicable law. *See Domagalla v. Dept. of Rev.*, 283 Or 377, 382, 584 P2d 256 (1978) (statutory predecessors of ORS 306.115(1) "obviously were intended to give the State Tax Commission (now the Department of Revenue) authority to enforce the provisions of [the uniformity clause of] the Oregon Constitution, Art. I, Sec. 32"). The court finds nothing in this broad delegation that would prohibit the department from changing the central assessment roll to correct an error, so long as that "act" is consistent with the "statutes * * * of the State of Oregon." The second sentence authorizes the department to correct errors, including valuation errors, "as provided under" later subsections, including subsection (3), but that authorization is "[a]mong other acts or orders deemed necessary by the department in exercising its supervisory powers." Assuming for the moment that, as the department argues, subsection (3) of ORS 306.115 applies only to corrections of *local* county property rolls, the court finds nothing in the second sentence of subsection (1) that diminishes the department's authority under the first sentence to change the *central* assessment roll. The court proceeds to review the statutes governing how those two rolls are created and how they interact.

Central assessment is an annual process in which the department first identifies a person conducting any of

---

*Century Edition of Bouvier's Law Dictionary Revised and Brought to Date* 878 (1926) (defining "order" as noun); James A. Ballentine, *Law Dictionary of Words, Terms, Abbreviations and Phrases Which Are Peculiar to the Law and of Those Which Have a Peculiar Meaning in the Law* 352 (1916) (same); Henry Campbell Black, *Law Dictionary Containing Definitions of the Terms and Phrases of American and English Jurisprudence, Ancient and Modern and including the Principal Terms of International, Constitutional, Ecclesiastical and Commercial Law, and Medical Jurisprudence, with a Collection of Legal Maxims, Numerous Select Titles from the Roman, Modern Civil, Scotch, French, Spanish, and Mexican Law, and Other Foreign Systems, and a Table of Abbreviations (2)* 857-58 (same); *Black's Law Dictionary* 988 (5th ed 1979).

the businesses listed in ORS 308.515; decides whether to value as a unit the property within and without Oregon that the person uses in that business; and, if so, "allocates" a portion of that unitary value to Oregon, using a formula that generally takes into account the type of business, the location of real and tangible personal property, and potentially other factors. *See* ORS 308.540 to 308.550. The department creates a record of its work, initially referred to as the "tentative" central assessment roll for the tax year. *See* ORS 308.560; ORS 308.582(4).

Thereafter, on or before May 25 of each year, the department must transmit to each company a notice showing the department's determination of the overall unit value and the value the department has allocated to that company's Oregon property, as proposed to be included on the tentative central assessment roll. *See* ORS 308.582. By the same date, the department must "apportion" the value of each company's Oregon property among the counties where company property is sitused, again using a formula that generally takes the location of real property and tangible personal property into account. *See* ORS 308.582(4); ORS 308.565 to 308.575. A company seeking a change to the Oregon assessment or the department's apportionment may pursue the administrative remedy of a conference with the Director, and the company must exhaust that remedy as a prerequisite to appeal to this court. *See* ORS 308.584.

On or before August 1, the Director must examine and correct the tentative assessment roll, including corrections in response to conferences with taxpayers. *See* ORS 308.584(3). By the same date, the Director must correct any errors in apportionment of value to the counties. *See* ORS 308.590; ORS 308.600. The Director must then "certify" the assessed value as apportioned to each county. *See* ORS 308.621(2).

After this certification, the department's role in the regular annual central assessment process is finished. From this point, it falls to each county assessor to *further* apportion the county-wide assessed value for each company among the individual taxing jurisdictions within the

county,[5] and to enter those values on the same *local* county assessment roll that holds all the information the county assessor has gathered regarding locally assessed property for that year. *See id.* The county assessor must then certify the accuracy of the local county assessment roll and transmit it to the local county tax collector. *See* ORS 311.115. The collector (who in some counties is the same person as the assessor) uses that local roll, including the apportioned value of centrally assessed property, to generate the tax bills that are mailed to taxpayers on or before October 25 each year. *See id.* Companies whose property is centrally assessed receive their bills from the same county assessors or collectors, and at the same time, as homeowners and owners of other, locally assessed property. The department does not create, send, or collect on property tax bills. If a refund of property tax must be paid, it is the county governing body that must issue the refund, whether at the direction of the department, upon the order of a court, or in some circumstances, through local processes independent of the department or the courts. *See* ORS 311.806.

To address errors or omissions discovered after the regular annual cycle, the statutes provide separate, but coordinated, mechanisms for correcting local rolls and the central assessment roll, in either case up to five years prior to the most recent certified roll. Corrections to a local roll are governed by ORS 311.205 to 311.234. Paragraph (1)(a) of ORS 311.205 generally authorizes a county assessor to correct clerical errors. Paragraph (1)(b) authorizes a county assessor to correct an error in valuation judgment in limited circumstances, or to correct any other error or omission of any kind. ORS 311.223 authorizes a county assessor to correct the roll to add omitted property,

---

[5] Apportionment to counties and within counties determines the tax rate that applies to the property's assessed value—an important factor in the annual cost to the company, given that rates in Oregon can vary geographically by nearly a factor of three. Each county contains various political subdivisions such as cities, school districts, water districts, and other local jurisdictions that enjoy statutory authority to levy property taxes, each at its own rate, subject to constitutional and local budget law limitations. Setting aside constitutional limitations, the tax rate for each property is the aggregate of the several rates of the various taxing jurisdictions (including the county itself) in which the property is situated. *See* Oregon Department of Revenue, *Oregon Property Tax Statistics Fiscal Year 2019-20* (Pub No 150-303-405) (May 2020).

following notice to the taxpayer and an opportunity for a hearing.

Corrections to the certified central assessment roll, including the addition of omitted property, generally are governed by ORS 308.624 to 308.636, as discussed in more detail below. However, a variety of statutes generally coordinate correction actions of the department and the local county assessor. A county assessor "shall make any change requested by the department that relates to an assessment of property made by the department under [the central assessment statutes]." ORS 311.205(1)(c). If the department corrects the certified central assessment roll to add omitted property (or, arguably, if the department's correction of a different kind of error causes the assessment to increase), the department must notify the local county assessor, who must make an "appropriate" correction to the local county assessment roll. *See* ORS 308.636(2) (county assessor to add omitted centrally assessed property on local roll); ORS 308.624(6) (certain other corrections resulting in increased assessment treated as addition of omitted property). A county assessor is specifically prohibited from correcting, on the local county assessment roll, an error in valuation judgment regarding centrally assessed property unless the Department approves. *See* ORS 311.205(1)(b)(B).[6]

Under this system of linked, dual rolls, any refund of tax[7] presupposes a correction to the local roll, regardless of whether the property at issue is locally or centrally assessed, because the value of both classes of property always ends up together on a local county roll, and the county governing body must issue any refund.[8] The statutory context reveals

---

[6] However, a county assessor is authorized to add property to the local county assessment roll as omitted property, even if the property is centrally assessed. ORS 311.216(1).

[7] As a matter of procedure, the end result of a taxpayer's successful appeal is nearly always a refund. Property taxes are due and payable pursuant to rigid statutory deadlines; in contrast to income tax disputes, the law provides no exception to timely annual payment for property taxes subject to appeal. *See* ORS 311.505 (listing due dates for payment; requiring interest for underpayment); ORS 311.814 (allowing county to establish interest-bearing reserve account to hold potential refund amounts during pendency of certain large cases).

[8] Whenever a county governing body pays a refund, including upon the order of the department, the tax collector must make "necessary correcting entries in the records of the office of the tax collector." ORS 311.806(6).

no basis to conclude that the petition process under ORS 306.115(3) is unavailable for centrally assessed property. Under ORS 306.115(3), if the department upon hearing the petition "discovers" a reason to exercise its discretion, the department may "order" a correction to the local roll. And under ORS 306.115(1), the department may "act" to correct the central assessment roll, so long as that correction is consistent with other statutes.[9]

### 4. *Conclusion regarding ORS 306.115(3)*

The court concludes that ORS 306.115(3) allows taxpayer to petition the department for a change or correction to local assessment or tax rolls for counties to which taxpayer's property value was apportioned. Taxpayer's petition seeking a refund must be read as implicitly requesting changes to both the local rolls and the central assessment roll. The court's remaining task is to decide whether any provision of law restricts the department's broad authority under ORS 306.115(1) in a way that prohibits the department from making the corresponding correction to the central assessment roll.

### B. *Does ORS 308.624(4) prohibit the department from making taxpayer's requested correction to the central assessment roll?*

The department contends that ORS 308.624(4), enacted in 2007, prohibits the department from changing the central assessment roll in the manner taxpayer requests in taxpayer's petition pursuant to ORS 306.115(3).

---

[9] At the court's request, the parties submitted additional briefing on the legislative history of the 1983 law that created ORS 306.115(3), records of which the department had provided earlier in the proceedings. The court finds nothing in the record that addresses whether centrally assessed property may or may not be the subject of a petition under ORS 306.115(3). As would be expected, given the relatively small number of companies with centrally assessed property compared to the large number of individuals and businesses holding locally assessed property, the discussion focused on scenarios involving locally assessed property. The only mention of centrally assessed property was a legislator's question referring to a different bill. Tape recording, Senate Committee on Revenue, SB 68, Mar 7, 1983, Tape 49, Side A (discussion between Senator Hanlon and Department of Revenue representative) ("Sen. Hanlon: '[i]s this the Bill that the interim committee introduced to deal with the situations arising out of utilities challenging the assessed values ***?' *** [Larry Dixon of Department of Revenue]: 'I don't believe it is.'").

1.  *Text of ORS 308.624*

The court again starts with the text of the statute. ORS 308.624 provides:

"(1)   Following the date that an assessment roll prepared under ORS 308.505 to 308.681 is certified under ORS 308.621, the Director of the Department of Revenue may correct a clerical error, or an error or omission in the certified roll, as prescribed in this section.

"(2)   For purposes of this section, a clerical error is an error on the roll that arises from an error in the records of the Department of Revenue and that, had it been discovered by the department prior to certification of the roll, would have been corrected as a matter of course, and for which the information necessary to correct the error is contained in the records of the department. Clerical errors include, but are not limited to, arithmetic or copying errors or the omission or misstatement of a property value on the roll.

"(3)   Except as provided in subsection (4) of this section, the director may correct any other error or omission of any kind, including, but not limited to:

"(a)   The elimination of the assessment to one person or company of property owned or used by another person or company on the assessment date;

"(b)   The correction of a value changed on appeal;

"(c)   The correction of an error in the assessed value of property resulting from an error in the identification of a unit of property;

"(d)   An error in apportionment of assessments on the roll; and

"(e)   An error in the ratio of average maximum assessed value to average real market value determined under ORS 308.153.

"(4)   For purposes of this section, the director may not correct an error in valuation judgment that is an error in the department's opinion of the value of property.

"(5)   Corrections may be made under this section to the roll last certified, or to the certified roll for any prior year that does not exceed five years prior to the year for which the last roll was certified under ORS 308.621.

"(6)   If the director makes a correction under this section that has the effect of increasing the assessment to which the correction relates, except where the correction is made to correct a value changed on appeal, the department shall treat the correction as an addition of omitted property for purposes of giving the notice required under ORS 308.632."

The court reads the text of subsection (1) as specifying two kinds of "correction" that the Director may make after having certified the central assessment roll under ORS 308.621(1): correction of a "clerical error," or correction of "an error or omission in the certified roll." Subsection (2) defines "clerical error," notably as an error "for which the information necessary to correct the error is contained in the records of the department." Subsection (3) addresses "any *other* error or omission of any kind" (emphasis added) and provides non-exclusive examples in paragraphs (a) through (e).[10]

The court considers whether the action taxpayer seeks in this case is a "correction," and if so, whether the correction fits within subsections (1) through (3) of ORS 308.624. At the conclusion of taxpayer's September 8, 2020, petition to the Director, taxpayer describes the specific result sought as follows:

"Petitioner requests that the Department order a change or *correction* to the assessment of the Subject Property for the Subject Years and to the tax roll for the Subject Years to *reflect the correct value* of the Subject Property pursuant to ORS 306.115. Such change should reflect the *correct* contract rates and total expenses, *in the same manner as the Assessor did for the Current Year.* The specific result requested by Petitioner also includes a refund of overpaid property taxes for the Subject Years, plus interest as required by statute."

(Emphases added.) The petition describes the basis for the correction as "a likely error on the roll" stemming from the department's use of only "on-peak" rates instead of a blend that includes off-peak rates that taxpayer proffers to the

---

[10] Section (5) specifies the range of tax years for which the director may correct rolls under ORS 308.624. Section (6) requires the director to follow the notice procedure for omitted property in ORS 308.632 if the correction has the effect of increasing the assessment.

department, as well as the department's use of an incorrect set of projected expenses instead of a new set that taxpayer proffers. The court concludes that the action taxpayer seeks undisputedly is a roll "correction"; accordingly, the next step is to determine whether taxpayer seeks either correction of a "clerical error" or correction of "any other error or omission of any kind."

The court sees no basis to characterize the relief taxpayer seeks as a "clerical error" under ORS 308.624(2). Taxpayer's requested change is not based on an error "for which the information necessary to correct the error is contained in the records of the department." The whole point of taxpayer's petition is to persuade the department to consider *new* information, relating to off-peak rates and expenses, that was not in the records of the department when the department initially set the value, because taxpayer had not filed annual statements or otherwise provided that information to the department.

Turning to ORS 308.624(3), the plain text is sweeping: "the director may correct any other error or omission of any kind ***." Taxpayer's description of the subject of its petition as a "likely error on the roll" seems to fit squarely within the broad scope of this text. Although the court sees no basis to fit taxpayer's petition within any of the categories in paragraphs (a) through (e), that is irrelevant because the court reads those categories as nonexclusive examples. *See United Streetcar, LLC v. Dept. of Rev.*, 23 OTR 418, 434 (2019) (interpreting "including, but not limited to" in statute to make list "expressly nonexclusive").

The court now considers the text of subsection (4) of ORS 308.624. Taxpayer's petition asserts essentially that the department's indicator under the income approach to value for tax years 2018-19 and 2019-20 was wrong because the department should have applied a different set of factual assumptions as to likely "cash flows" and "expenses." The department characterizes taxpayer's argument as a challenge to the department's opinion of value. The court agrees with the department's characterization. *See Hewlett-Packard Co. v. Benton County Assessor*, 357 Or 598, 609, 356 P3d 70 (2015) ("[A]n appraiser may exercise professional judgment while both collecting [valuation] data and weighing its

relevance."); *see generally* Appraisal Institute, *The Appraisal of Real Estate* 493-95 (15th ed 2020) (describing procedural steps for forecasting income and expenses). The court concludes that the statutory text strongly indicates that subsection (4) precludes taxpayer's appeal because taxpayer has petitioned the Director to correct an error in valuation judgment that is an error in the department's opinion of the value of property.

2. *Context informing the meaning of ORS 308.624*

The court turns to relevant context, which includes other statutes covering related subject matter. *See Northwest Natural Gas Co. v. City of Gresham*, 359 Or 309, 322, 374 P3d 829 (2016).

a. Omitted property statutes

One related subject is the treatment of "omitted property," meaning property that existed in a prior tax year but that the department did not put on the roll for that tax year. *See* ORS 308.628(1). The department is required to correct a prior year's central assessment roll to add the value of omitted property, subject to the taxpayer's rights to notice and a hearing as well as a five-year limitation period. *See* ORS 308.636(1) (department "shall proceed to correct each certified assessment roll from which the property was omitted"); *see generally* ORS 308.628 to 308.636. The omitted property statutes obviously require the department to exercise valuation judgment in determining the value of the property to be added. A provision in the omitted property statutes states: "ORS 308.624(4) does not apply to the addition of omitted property under subsection (1) of this section." ORS 308.628(3).

One possible explanation for the existence of ORS 308.628(3) is that the legislature viewed the addition of omitted property as within ORS 308.624(3)'s broad category of a correction of "any other[, *i.e.*, nonclerical,] error of any kind." According to this view, because the department's authority to correct an error "of any kind" is limited by the prohibition in subsection (4) of ORS 308.624 against correcting errors in valuation judgment, ORS 308.628(3) was necessary in order to undo the effect of subsection (4) so as to authorize

the department to add the value of omitted property. This view supports a literal and expansive interpretation of ORS 308.624(3) and (4): the department is authorized to correct any kind of error or omission in the central assessment roll except an error in the department's valuation judgment; when the legislature wants to create an exception to ORS 308.624(4), it does so by specifically referring to that statute.

An alternative view is that the legislature created ORS 308.628(3) not because adding omitted property "correct[s] any other error of any kind," which would trigger the prohibition against changes in valuation judgment in ORS 308.624(4), but simply to avoid doubt or confusion regarding any possible conflict between ORS 308.628(3) and ORS 308.624(4). This court and the Oregon Supreme Court have occasionally concluded that the legislature has created statutory text simply to repeat the point for emphasis, or to make the point expressly even though the point is already mplicitt elsewhere. *See Thomas Creek Lumber and Log Co. v. Dept. of Rev.*, 344 Or 131, 138, 178 P3d 217 (2008) ("[N]othing prohibits the legislature from saying the same thing twice[.]"); *State v. Cloutier*, 351 Or 68, 98, 261 P3d 1234 (2011) ("In some cases, [redundancy] may be what the legislature intended.").[11] However, as applied to this case, the premise of that view is that adding omitted property does not "correct" an "error" but instead performs some other function that is outside the scope of ORS 308.628(3). That premise does not apply here. Adding omitted property is, by definition, the correction of an error, because the property must have existed on the assessment date of the prior year in order to be added to the roll later. *See generally DISH Network Corp. v. Dept. of Rev.*, 364 Or 254, 279, 434 P3d 379 (2019) ("omitted property" generally refers to "property that was assessable to a taxpayer's account in the year or years preceding the current assessment year, but for whatever reason was not actually assessed to the taxpayer/account in those years").

---

[11] The court notes that it finds no conflict between subsection (4) and subsection (3)(b) of ORS 308.624. Subsection (3)(b) specifically authorizes the Director to correct "a value changed on appeal." Although the value thus changed may well be the department's own "opinion of the value of property," the more specific authorization to make that change, in subsection (3)(b), prevails over the general prohibition, in subsection (4), against correction of the department's opinion of value.

The text of ORS 308.636(1) supports this view, using the verb "correct" when referring to the addition of omitted property.

Overall, the court concludes that the context supplied by the omitted property statutes for centrally assessed property supports reading subsection (3) of ORS 308.624 broadly, to mean that, after the department has certified the central assessment roll, whenever the department seeks to correct any clerical error, or any other error or omission of any kind, it must abide by the prohibition in subsection (4) against correcting an error in the department's opinion of the value of the property.

b.   Statutory development of ORS 308.624

The court now considers the statutory development of ORS 308.624 to seek any additional relevant context. *Gray v. Dept. of Rev.*, 23 OTR 220, 235 (2018). The bill creating ORS 308.624 was amended once, early in the session while the bill was before the House Revenue Committee. Bill File, HB 2239, Feb 23, 2007 (House Amendments to HB 2239). Those amendments revised subsection (4) of what was later codified as ORS 308.624.[12] For ease of reference, the court reprints the as-introduced and as-amended text of subsection (4), along with a marked version showing the changes in strikethrough and underlining:

*As introduced:*   "The director may not correct an error in valuation judgment. For purposes of this subsection, an error in valuation judgment is an error in the department's opinion of the value of property."

*As amended:*   "For purposes of this section, the director may not correct an error in valuation judgment that is an error in the department's opinion of the value of property."

*Markup showing amendments:*   "(4) <u>For purposes of this section, the</u> ~~The~~ director may not correct an error in valuation judgment <u>that</u>~~. For purposes of this subsection, an error in valuation judgment~~ is an error in the department's opinion of the value of property."

The main change is the addition of "For purposes of this section." As a matter of logic, this change could have

[12] The only other amendment to HB 2239 was the unrelated addition of a reference to ORS 305.280 in the provision of the bill now codified as ORS 308.636(3).

either or both of the following potential consequences: first, to *extend* the reach of subsection (4) to any parts of ORS 308.624 to which the prohibition against correcting valuation judgment errors otherwise would not apply; and second, to *limit* the reach of the prohibition solely to circumstances governed by ORS 308.624. As to the first, the court finds it plausible that the legislature intended to ensure that the prohibition encompasses the correction of clerical errors under subsections (1) and (2). The legislature could have wanted to clarify, for example, that in correcting "the omission or misstatement of a property value on the roll," the Department is not authorized to correct an error in its valuation judgment. *See* ORS 308.624(2). This interpretation is all the more likely because, unlike subsection (3), the provisions relating to clerical errors contain no cross-reference to the prohibition in subsection (4). *Cf.* ORS 308.624(3) ("*Except as provided in subsection (4) of this section*, the director may correct any other error or omission of any kind ∗∗∗.") (emphasis added).

As to the second potential consequence of the amendment, the court finds it difficult to conclude from the statutory text that the legislature intended to limit the prohibition in subsection (4) to changes or corrections under ORS 308.624 alone. That is because, as discussed above, the plain text of ORS 308.624 encompasses every possible type of error correction: the correction of a "clerical error," and the correction of "any other error or omission of any kind." If every type of error or omission is fully addressed in subsections (1), (2), or (3) of ORS 308.624, then an amendment that limits subsection (4) to "this section" does not limit the reach of subsection (4) at all.

Overall, the statutory development of ORS 308.624 weighs in favor of a conclusion that the legislature intended that statute to prohibit the department from correcting an error in its valuation judgment, in any circumstance, after the central assessment roll has been certified.

c.   Comparison with *Northwest Natural Gas*

Taxpayer argues that the department's position in this case is inconsistent with the department's actions

in *Northwest Natural Gas Co. v. Dept. of Rev.*, 347 Or 536, 226 P3d 28 (2010), *aff'd*, 19 OTR 367 (2007). As in this case, the taxpayer (Northwest Natural) sought a reduction in the assessed value of its centrally assessed property in an appeal from the Department's adverse decision under ORS 306.115(3) (2005).[13] Northwest Natural prevailed in this court and on appeal to the Supreme Court. Unlike this case, however, the basis for Northwest Natural's claim was that a portion of its property—natural gas held in storage for delivery to customers—was exempt from property tax under the general exemption for "inventory" in ORS 307.400 (2005).[14] *See Northwest Natural Gas Co.*, 347 Or at 540-41. The Department denied that the gas was eligible for the exemption based on various legal arguments. On appeal, this court rejected the department's legal arguments and granted relief to Northwest Natural, and the Supreme Court affirmed that decision. Although the prohibition in ORS 308.624(4) against correcting an error in valuation judgment on the certified central assessment roll had not yet been enacted when the department denied Northwest Natural's petition under ORS 306.115(3) (2005), even if subsection (4) had existed, it would not have applied to Northwest Natural's case because Northwest Natural's claim was based on a statutory interpretation issue rather than an error in the department's opinion of the value of property. The court concludes that the result in *Northwest Natural Gas Co.* is context consistent with the court's conclusion above: a taxpayer may bring a petition under ORS 306.115(3) with respect to centrally assessed property, and the department may grant relief *if* the correction does not run afoul of ORS 308.624(4) or any other restriction on the department's authority.

---

[13] Northwest Natural sought relief for a total of four tax years; as to the first three years, Northwest Natural filed a petition under ORS 306.115(3), and as to the fourth year, Northwest Natural instead apparently sought a conference with the Director under ORS 308.595 (2005). *See* 19 OTR at 368-70. The department denied relief under both provisions of law. Northwest Natural appealed both determinations to the Magistrate Division, which consolidated the appeals. This court and the Supreme Court held that the exemption under ORS 307.400 applied, and that Northwest Natural was entitled to relief as to all four years.

[14] The taxpayer also sought relief for appliances held for sale to the general public at stores owned by the taxpayer. The procedural treatment of the appliances differed from that of the gas in ways not material to this case.

### 3.  *Legislative history of ORS 308.624*

The court turns to the legislative history of ORS 308.624. Based on the archival records, the bill creating ORS 308.624 was "presession filed" at the request of the department. HB 2239 (2007).[15] A chronology of relevant events follows:

- On January 16, 2007, the Speaker referred the as-introduced version to the House Revenue Committee. Bill File, HB 2239 (House Measures Journal).

- On January 18, 2007, a representative of the department submitted a letter to the chair of that committee, requesting "approval for the drafting of an amendment to HB 2239," as discussed below. Bill File, HB 2239, Jan 18, 2007 (letter from Department to House Revenue Committee Chair).

- On February 6, 2007, the House Revenue Committee held its first and only public hearing. The department's representative was the sole witness who appeared and testified.[16] The hearing lasted approximately forty minutes. Audio Recording, House Committee on Revenue, HB 2239, Feb 6, 2007, at 0:15–40:41 (public hearing on HB 2239).[17]

- On February 12, 2007, the Office of Legislative Counsel produced text of proposed "dash one" amendments for consideration by legislators. This proposed text applied the Department's changes, using the language the department had proposed in its January 18 letter to the Revenue Committee Chair. Bill File, HB 2239, Feb 12, 2007 (Proposed -1 Amendments HB 2239).

---

[15] A "legislative concept" dated December 1, 2006, contains text identical to the as-introduced version of HB 2239. Bill File, HB 2239, Dec 1, 2006 (Draft – LC 715).

[16] On February 6, 2007, a legislative analyst for the City of Eugene submitted a letter to the committee chair requesting an amendment requesting an amendment that would require notice to be given to cities if an appeal is filed on the assessed value of nonresidential property, and an opportunity for cities to comment. Bill File, HB 2239, Feb 6, 2007 (letter from City of Eugene to House Committee on Revenue). At the February 6, 2007, hearing, the chair referred the question to the department for follow-up, and the court has found no record of further action on the city's request.

[17] Available at: https://olis.oregonlegislature.gov/liz/mediaplayer/?clientID= 4879615486&eventID=2007021172 (accessed Apr 1, 2022).

- On February 20, 2007, the House Revenue Committee held a work session lasting approximately five minutes, approving the proposed -1 amendments and moving the bill to the House floor, where it was approved without opposition on the "Consent Calendar" on March 5, 2007. Audio Recording, House Committee on Revenue, HB 2239, Feb 20, 2007, at 11:31 to 16:25 (work session on HB 2239).[18]

- On May 22, 2007, the Senate Finance and Revenue Committee heard brief testimony from the department's representative and held a work session passing the bill to the Senate Floor, where it was approved without opposition on May 25, 2007. Audio Recording, Senate Committee on Finance and Revenue, HB 2239, May 22, 2007, at 23:30 to 30:11 (public hearing and work session on HB 2239).[19]

The portion of the legislative record that most specifically addresses ORS 308.624(4) is the written request for amendments that the department sent to the House Revenue chair on January 18, 2007. That document explains why the department sought amendments and offers the department's proposed text, apparently for consideration by the Office of Legislative Counsel, as drafters of any formal amendments:[20]

"We have identified two provisions in our presession filed bill, HB 2239, that we now believe will create unintended consequences. I have identified language that will fix these two provisions.

"*1.    The first provision in section 7 was intended to limit the director's authority to correct clerical errors to those errors where no valuation judgment is necessary. We believe now that that provision could be interpreted to limit the director's authority under a totally separate statute and chapter.*

"Fix:    Move the phrase 'For the purposes of this subsection …' from the second sentence of subsection 4, Page 4, lines

---

[18] Available at: https://invintus-client-media.s3.wasabisys.com/4879615486/oregon_3e0cc21f-86e0-43d3-9ef4-187dabfcb2f9_audio.mp3 (accessed Apr 1, 2022).

[19] Available at: https://invintus-client-media.s3.wasabisys.com/4879615486/oregon_0f61c822-eebb-41b0-8f90-303d68b31b82.mp4 (accessed Apr 1, 2022).

[20] *See* Oregon Legislative Assembly, *Bill Drafting Manual* (17th ed 2014) (*Drafting Manual*) at Foreword ("preparation of bills *** is one of the major functions of the Office of Legislative Counsel").

17 and 18 to the beginning of subsection 4 on line 17 and change the word 'subsection' to 'section' so that it is clear that the limitation applies only to the errors that are clerical in nature."

Bill File, HB 2239, Jan 18, 2007 (letter from Department of Revenue to House Revenue Committee Chair) (emphasis added). The emphasized text seems to indicate that the department wished to limit the reach of subsection (4) to avoid depriving the Director of the authority to correct valuation errors "under a totally separate statute and chapter."[21] Neither the January 18, 2007, request for amendments, nor anything else that the court has found in the legislative history, identifies the "totally separate statute and chapter." It is, therefore, possible that the department intended to seek an amendment that would preserve the Director's authority to correct errors in valuation judgment on the certified central assessment roll in response to petitions under ORS 306.115(3). However, the department did not testify about the substance of the amendment in either of the two public hearings, and no legislator brought up such an intention in the hearings or work sessions.

The first hearing, before the House Revenue Committee, occurred on February 6, 2007, nearly a week before the proposed -1 amendments were produced. A committee staff member introduced HB 2239, describing it as making "minor changes," and adding, "however, there is a clause in the current bill that was, I believe, unintended.[22] It would rescind the department's ability to correct an error in valuation judgment and I believe an amendment was coming in that regard." The department's representative testified and answered questions about the department's overall intention as proponent,[23] and about specific pro-

---

[21] The letter also supports an intention by the department to *extend* the reach of subsection (4) to prohibit valuation judgment corrections of "clerical errors," in addition to "other" errors. *See id.* ("change the word 'subsection' to 'section' so that it is clear that the limitation applies only to the errors that are clerical in nature.")

[22] The court cannot determine from the audio recording whether the staff member stated that the clause "wasn't *** unintended" or "was *** unintended."

[23] The department's representative described the overall purpose of HB 2239 as "updating and streamlining" the central assessment statutes to eliminate "archaic" language and make the statutes more understandable. The representative emphasized the annual process by which the department prepares a

visions of the bill, including an overview of what became ORS 308.624(4).[24] Toward the end of the hearing, the Chair asked the department's representative to confirm that the department had requested an amendment regarding "the

---

"tentative" assessment, transmits the tentative value to the taxpayer, receives input from the taxpayer before and during a conference with the department's director, and uses that input to create a final, certified assessment. *Charter Communications v. Dept. of Rev.*, 24 OTR 88 (2020) (discussing provisions of HB 2239 declaring Director conference an administrative remedy that must be exhausted as prerequisite to appeal to this court).

[24] In one colloquy, the department's representative apparently referred to subsection (4) of what later was codified as ORS 308.624:

"John Phillips: Mr. Chair, Rep. Butler are we talking about, I thought we were talking about changes to the roll for clerical errors and errors.

"Rep. Butler: Right but add property in for a clerical error.

"John Phillips: Mr. Chair, Rep. Butler the errors that we are talking about here don't necessarily add value. They are clerical in nature, they're not, in fact there is a provision in the bill that says that the director can—that the department cannot make a change in valuation judgment on these kinds of errors. It specifically tries to parallel what's in another statute that deals with residential commercial for assessors that they use. The idea is that if you're making changes under a clerical error that you don't impose a valuation judgment you come up with, in other words you don't try to come up with another opinion of what the value of that property is. You simply correct an error."

(Emphasis added.) Later in the hearing, the Department's representative discussed other portions of ORS 308.624:

"John Phillips: Section 7 [later codified as ORS 308.624] is the new language for changes that are made to rolls, historical rolls, past rolls. So, they are not limited to this mid-June to August 1 date. This can happen at any time during the year that a mistake is discovered. These kinds of errors are listed and starting on the top of page four. It describes what a clerical error is. And this is almost identical language to what's in law in ORS 311.205, which talks about clerical errors that an assessor might discover.

"Again, we're trying to parallel what the assessor does with what the department does to the extent that we can do that. Property is just a little bit different. So, then in subsection (3), which is on line 7, page 4, the director may correct other kinds of errors besides clerical errors. And then it describes in A, B, C, D, and E what those are. One of those is, they may correct an error in value from an appeal. So, if you have a roll from three years ago, there was an appeal, the court orders a new value, this allows the director to change the value on the record.

"Chair Barnhart: Does this section establish new authority in the department in order to give it similar kinds of authority and responsibility as the assessors, as the county assessors have on noncentrally assessed property? Or is it simply restatement of the law that somewhere else in this bill that you've removed?

"John Phillips: Mr. Chair it's an attempt to simply flush out and restate what already exists."

*Id.* at 10.

issue of the clerical correction of the rolls," which the representative affirmed. Although the department's representative apparently had copies of its January 18, 2007, letter on hand, one of the committee members stated that copies had not been provided to members other than the Chair, and there is no indication that they were distributed during the hearing. *See id.* At the end of the hearing, the Chair commented: "We're obviously not finished with [HB 2239]; we have amendments to do."

The next legislative proceeding was the work session in the House Revenue Committee on February 20, 2007. The committee did not schedule a public hearing for that day; accordingly, it heard no testimony. Committee staff introduced the bill and the proposed amendments:

"Legislative Revenue Staff Mary Ayala:  And the other [amendment] was to add a little insertion there, * * * in one of the sections, that clarifies that the only—that only after the tax roll has been certified is a time at which point that the department may correct clerical errors or omissions, and *it is not prohibiting the department from correcting an error in the opinion of its value.* And that little clerical— that little insertion there 'for the purposes of this subsection' [inaudible] discussed [inaudible] the last meeting and *it needed to be in the * * * text or the department would not have thebilityy any longer to change its value.*

"Rep Barnhart:  I see, thank you and that's actually a rewrite, and it's at sub 4 on page 4, lines 17 through 19—I see it. *The way I perceive it, it simply is a rewrite of that * * * section so that the language works better.* OK great, thank you. Representative Butler.

"Rep Butler:   Mr Chair, I move that we append the dash 1 amendments to House Bill 2239, amendment dated 2/12/07.

"Rep Barnhart:   Thank you. Representative Butler moves the dash 1 amendments to House Bill 2239. Is there further * * * discussion? [Pause] You'll note that the 90-day issue is dealt with by adding the statute 305.280 which you'll also find in section 11 for easy reference on page 5, where we've * * * added the 90 days as part of the language of the bill. That's the 90-day issue and then the other language is simply a rewrite of the error in valuation issue.

"Ms. Ayala:  Yes,* * * it simply adds 'for the purpose of' right at page 4.

"Rep Barnhart: 'For the purposes of this section,' yes thank you. Anything else?"

Audio, House Committee on Revenue, HB 2239, Feb 20, 2007, 12:39-14:54 (discussion of HB 2239) (emphasis added).

As shown above, the committee staff stated that the proposed amendment to subsection (4) "is not prohibiting the department from correcting an error in the opinion of its value," and that the amendment was needed "or the department would not have the ability any longer to change its value." This portion of the summary appears to recapitulate the limiting purpose identified in the department's written request. However, the Chair's own description does not mention this purpose, but simply describes the amendment as a "rewrite * * * so that the language works better." The court has found no further comment on the amendment in the February 20 work session. At the only other legislative hearing, before the Senate Finance Committee hearing on May 22, 2007, the sole testimony was by the same department representative. There was no specific discussion of subsection (4) or its amendment.

Based on the department's January 18, 2007, letter, the court finds it plausible that *the department*, as proponent of the bill, intended the amendment of ORS 308.624(4) to preserve the department's authority, under an unidentified statute outside ORS chapter 308, to make changes in its valuation judgment. However, the legislative record does not persuade the court that any *legislators* formed that intention. No legislator referred to ORS 306.115(3) or to the issue of the preserving the department's authority to correct valuation errors after the central assessment roll had been certified. The Chair characterized the amendments to ORS 308.624(4) as "simply a rewrite."

4. *Conclusion regarding ORS 308.624*

The text of ORS 308.624(4) states plainly that "the director may not correct an error in valuation judgment that is an error in the department's opinion of the value of property." That prohibition applies to correction of a "clerical error" or the correction of "any other error or omission of any kind." Taxpayer in this case seeks a "correction" in the department's opinion of value of the subject property as

shown on the certified central assessment roll. The statutory context provided by the omitted property statutes shows that the legislature knew how to use express language to create an exception to the prohibition in ORS 308.624(4). Even if the court were to conclude from the legislative history that the department, in 2007, intended to ask the legislature to create or preserve such an exception, the department did not follow through with that intention by requesting an amendment to House Bill 2239 that would spell out an express exception under ORS 306.115. The prohibition in ORS 308.624(4) is, for purposes of ORS 306.115(1), one of numerous "statutes of the State of Oregon" that define how "properties are taxed." Accordingly, the otherwise broad delegation of authority in ORS 306.115(1) must yield to ORS 308.624(4).[25] The court must conclude that ORS 308.624(4) eliminates the department's authority to correct the certified central assessment roll to change the department's opinion of the value of property. In light of this conclusion, the court need not consider the parties' arguments regarding whether taxpayer's petition met the requirements of a petition under OAR 150-306-0050.

## IV.   CONCLUSION

Although nothing prohibits taxpayer from petitioning the department for relief under ORS 306.115(3) with respect to taxpayer's centrally assessed property, ORS 308.624 prohibits the department from granting the particular relief taxpayer seeks: correction of an error in the department's opinion of the value of taxpayer's property as shown on the central assessment rolls for tax years 2018-19 and 2019-20. Now, therefore,

IT IS ORDERED that Defendant's Motion for Summary Judgment is granted; and

IT IS FURTHER ORDERED that Plaintiff's Cross-Motion for Summary Judgment is denied.

---

[25] Because the court concludes that the text of ORS 306.115(1) makes the department's broad authority to "do any act" subordinate to the prohibition in ORS 308.624(4), the court need not consider the department's argument that ORS 308.624(4) prevails because it was enacted "later in time" than ORS 306.115.